**INDIANA GAS COMPANY, INC.,**
**Appellant–Applicant,**

v.

**OFFICE OF the UTILITY CONSUMER COUNSELOR and the Indiana Utility Regulatory Commission, Appellees.**

**No. 93A02–9106–EX–259.**

Court of Appeals of Indiana,
Fifth District.

March 17, 1993.

Daniel W. McGill, Barnes & Thornburg, Ronald E. Christian, Indiana Gas Co., Inc., Indianapolis, for appellant-applicant.

James L. Turner, Matthew L. Headley, Office of Utility Consumer Counselor, Indianapolis, for appellees.

SHARPNACK, Chief Judge.

This case is another phase in the effort of Indiana Gas Co. ("Gas Co.") to prevent the Indiana Utility Regulatory Commission ("Commission") from implementing its interpretation of the "earnings test" in processing applications for gas cost adjust-

ments. The first phase resulted in the decision of the third district in *Indiana Gas Co. v. Office of Utility Consumer Counselor* (1991), Ind.App., 575 N.E.2d 1044. Gas Co. contends that because this case is sufficiently different from *Indiana Gas* we need not follow it. In addition, Gas Co. contends that some of the issues presented here were not addressed by *Indiana Gas.*

Before addressing the issues raised by Gas Co., it would be helpful to give context to the issues by explaining the process by which a gas utility is permitted to adjust its charges to customers to reflect fluctuations in its cost of gas without going through a complete rate change process. The process is provided for in I.C. 8–1–2–42(g) and is referred to a gas cost adjustment application (GCA). Although the process was initially conceived to meet a situation in which gas costs were rising frequently and sharply, it is equally applicable to a situation where the cost of gas is falling. *Id.* GCAs generally seek to pass through, on a dollar for dollar basis, any increase or decrease in gas cost the utility is experiencing. In setting up the process to be applied by the Commission in determining GCAs, the legislature required that the GCA be subjected to an earnings test. Specifically, the provision was:

"(g)(3) A gas utility may apply for a change in its gas cost charge not more often than each three (3) months. When such application is filed, the petitioning utility shall show the the commission its cost of gas for the period between its last order form the commission approving gas costs in its basic rates and the latest month for which actual gas costs are available. The petitioning utility shall also estimate its average gas costs for a recovery period of not less than the three (3) calendar months subsequent to the expiration of the thirty (30) day period allowed the commission in subdivision (1). The commission shall conduct a summary hearing solely on the gas cost adjustment requested in the petition subject to the notice requirements of IC 8–1–1–8 and may grant the requested gas cost charge if it finds that:

\* \* \* \* \* \*

(C) the gas cost adjustment applied for *will not result, in the case of a public utility, in its earning a return in excess of the return authorized* by the commission in the last proceeding in which the basic rates and charges of the public utility were approved; however, *if the gas cost adjustment applied for will result in the public utility earning a return in excess of the return authorized* by the commission in the last proceeding in which basic rates and charges of the gas utility were approved, *the gas cost adjustment applied for will be reduced to the point where no such excess of return will be earned...."*

I.C. § 8–1–2–42(g)(3) (emphasis added).

It is the interpretation and application of the earnings test that is at the heart of this case. Gas Co. argues that this statute requires that any excess earnings must result solely from the requested adjustment, i.e., be caused by it. Gas Co. continues from this proposition to the further argument that since the requested GCAs here were for reductions to reflect decreased gas costs, there is no way that the adjustments could result in or cause an excess return.

The Commission has taken the position that the earnings test in the statute requires it to determine if the utility is earning in excess of the return authorized in the last general rate setting. The authorized return is expressed in terms of an annual net operating income permitted to the utility. If the utility is found to be earning more than that amount on a quarterly basis, the Commission reduces the requested adjustment to the extent necessary to bring the anticipated return for the three month period covered by the GCA in line with the authorized return on a quarterly basis. In the application of the earnings test by the Commission, it is not material that the excess earnings were generated by factors other than the requested adjustment. In fact, the Commission recognizes that excess earnings will never be

caused by a gas cost adjustment because the adjustment merely passes on the change in gas cost. The Commission, however, has concluded that it would violate its mandate from the legislature to approve an adjustment that would permit the continued earning of excess net income. (Order, Commission Cause no. 37091, Record, GCA27, pp. 644–655.) [1]

It is in this context that we review this case.

This is the consolidated appeal of three separate orders of the Commission. In two of these cases, cause numbers 37394–GCA26 and 37394–GCA27, the Commission initially issued orders granting Gas Co. authority to reduce the charges to its customers in order to reflect its current costs of procuring gas. This reduction in charges was to be accomplished by credits reflected on bills to customers. The initial order in GCA26 which covered the months of June, July, and August of 1990 was entered on May 30, 1990, and was designated as an "Order on Less Than All Issues." This order, in addressing the issue of return to be earned, noted the conflicting positions of the utility and the utility consumer counsel and the fact that the utility was earning a net operating income in excess of that authorized in the last general rate case. The order stated:

"The Commission is unable at this time to make a finding as to which result is appropriate. Therefore, on an interim basis, subject to refund, we find it appropriate to approve the Applicant's requested GCA factor, expressly reserving resolution of this issue for a second Order to be issued in this Cause."

The initial order in GCA27 for September, October and November, 1990, was issued on August 22, 1990, and was also designated as an "Order on Less Than All Issues." With respect to the return to be earned, the order provided, "This issue will be addressed in a subsequent order."

On January 16, 1991, final orders were issued in both GCA26 and GCA27. These orders each recited that the initial order had been on less than all of the issues. In the final order in GCA27, the Commission noted that the initial order of August 22, 1990, had provided that the "appropriate return to be earned should be addressed in a subsequent Order." In each order, the utility was ordered to initiate quarterly refunds in its next GCA in the amount of $364,920 for the period covered by GCA26 and $481,725 for the period covered by GCA27. On May 29, 1991, the Commission entered orders on reconsideration in each of GCAs 26 and 27, confirming the earlier final orders, and an order in GCA30 under which the refunds of the amounts determined to be excess returns in GCAs 26 and 27 were to be made over the period covered by GCA30: June, July, and August of 1991.

The Commission did not consider the claim of Gas Co. that the earnings test could never be applied to a GCA involving a reduction in gas cost because the Commission held that Gas Co. was barred from making that claim due to the fact that Gas Co. had requested and received a favorable addition to its rate base on the theory that the Commission's application of the earnings test to GCAs had reduced Gas Co.'s potential to benefit from earnings in excess of its authorized return. (See Order, Commission Cause no. 38080, Record, GCA27, pp. 771–772.) The Commission applied the same reasoning to decline to address the additional contention of Gas Co. that the process unlawfully required the refund of past earnings contrary to the prospective language of the statute.

Gas Co. raises four issues on appeal. We reorder and restate these issues as follows:

1. Did the Commission correctly decide that the doctrine of res judicata barred consideration of the issue of whether the earnings test contained in Ind.Code § 8–1–2–42(g)(3)(c) applies to GCAs that reduce gas costs?

---

1. The record from the appeal of the order in GCA27 was filed separately from the record in the appeal in GCA30. The record page numbers were not changed to reflect the consolidation of the appeals. We will therefore refer to portions of the record originally filed in the appeal of GCA27 as Record, GCA27. We will refer to the record in GCA30 as Record.

2. Does the earnings test apply to GCAs which reduce the price customers pay for gas?

3. Did the Commission's refund order constitute retroactive rate setting?

4. Must the Commission specifically state in its order on less than all of the issues in a GCA proceeding, that excess earnings are subject to refund in order to require, in the final order in the proceeding, that the utility refund excess earnings which resulted from the order on less than all of the issues?

■ Gas Co. asks us to review the Commission's interpretation and implementation, under the facts as determined by the Commission, of I.C. § 8–1–2–42(g)(3), the statute which both authorizes and regulates GCAs. When we review a decision of the Commission, we may reverse only if the decision is unsupported by substantial evidence on the record or the decision is contrary to law. *Public Service Commission v. Chicago, Indianapolis & Louisville Railway Co.* (1956), 235 Ind. 394, 397, 132 N.E.2d 698, 700, *rehearing denied*, 235 Ind. 394, 134 N.E.2d 53. An order of the Commission is contrary to law if any statute, constitutional provision, legal principle, or rule of substantive or procedural law has been violated in the composition of the final administrative order. *Id.* We may not reweigh the evidence in the process of determining whether the Commission's decision was supported by substantial evidence, and we may not substitute our judgment for that of the Commission. *Boone County Rural Electric Membership Corp. v. Public Service Commission* (1959), 239 Ind. 525, 532, 159 N.E.2d 121, 124.

■ Because the Commission is an administrative agency, we may apply the same standard of review applicable to the decisions of any administrative agency as to its decisions of law. When we review the decision of an administrative agency, we are not bound by its interpretations of law, and we are free to determine any legal question which arises out of its decision. *Public Employees' Retirement Fund v. Miller* (1988), Ind., 519 N.E.2d 732, 733. Whenever an agency interprets its own statute, we accord its interpretation great weight, but we are not bound by the agency's interpretation and should reverse if the agency incorrectly interpreted the statute. *Hamilton County Department of Public Welfare v. Smith* (1991), Ind.App., 567 N.E.2d 165, 168; *Department of Environmental Management v. AMAX, Inc.* (1988), Ind.App., 529 N.E.2d 1209, 1214.

■ Gas Co. contends that the Commission erred when it held that the doctrine of res judicata barred reconsideration of the issue of whether the earnings test applied to negative GCAs. Gas Co. argues that res judicata does not apply here because the Commission was acting in a legislative, and not a judicial, capacity when it considered the negative GCA question in the earlier proceeding, which was a rate setting case. The utility cites *Watson Rural Water Co. v. Indiana Cities Water Corp.* (1989), Ind. App., 540 N.E.2d 131, and *South Bend Federation of Teachers v. National Education Association* (1979), 180 Ind.App. 299, 389 N.E.2d 23, for the proposition that legislative determinations of an administrative agency are not res judicata and do not bind the agency in subsequent proceedings. Gas Co. then cites numerous cases from Indiana and other jurisdictions for the proposition that ratemaking is a legislative function: *Bissell Carpet Sweeper Co. v. Shane Co.* (1957), 237 Ind. 188, 143 N.E.2d 415; *Office of Utility Consumer Counselor v. Public Service Company* (1984), Ind. App., 463 N.E.2d 499; *South Bend Federation of Teachers, supra; Wabash Valley Power Association v. Public Service Co.* (S.D.Ind.1988), 678 F.Supp. 757.

We hold that res judicata does not govern this case. In *South Bend Federation of Teachers*, this court noted that res judicata principles apply when an administrative agency acts in a judicial capacity, but do not apply when the agency acts in a legislative capacity. In his opinion for the court, Chief Judge Buchanan quoted the following passage from 2 Am.Jur.2d, *Administrative Law* § 497 (1962):

"In general, the answer given by the courts to the question whether an administrative determination is capable of be-

ing res judicata depends on the nature of the administrative action involved, *and the doctrine of res judicata has been applied to administrative action that has been characterized by the courts as 'adjudicatory,' 'judicial,' or 'quasi-judicial,'* while to administrative determinations of 'administrative,' 'executive,' 'legislative,' or 'ministerial' nature the rules of res judicata have been held to be inapplicable. [Emphasis in original.] *Estoppel by judgment or res judicata does not apply to legislative action by administrative agencies, and for this purpose rate orders are classified as legislative.*

180 Ind.App. at 315, 389 N.E.2d at 33 (except where indicated, emphasis added).

Here, the Commission in the general rate case considered with favor the argument of Gas Co. that application of the Commission's interpretation of the earnings test in GCA proceedings effectively barred Gas Co. from the potential to retain excess earnings it would otherwise retain. An upward adjustment in the rates Gas Co. could charge was accordingly made by the Commission. *See In re Indiana Gas Co.* (1987), Ind.Util.Reg.Comm'n., 86 PUR4th 241, 289–290. The fixing of the rate in that proceeding we hold was a legislative function and, therefore, Gas Co. is not precluded from claiming that the earnings test does not apply to GCAs which seek to pass on reductions in gas costs.[2]

■ We are next faced with the question of what action is appropriate given our resolution of the first issue. Because we have concluded that the Commission was incorrect in its application of the doctrine of res judicata to the issues raised by Gas Co., we must remand the case to the Commission so that it may apply its expertise to the consideration of the issues unless *Indiana Gas* has resolved those issues, making further consideration unnecessary. *See Citizens National Bank v. Harvey* (1976), 167 Ind.App. 582, 594–595, 339 N.E.2d 604, 611.

While it is clear that *Indiana Gas* addressed the issue of the application of the earnings test to GCAs where gas prices are falling, it appears that the issue was treated in terms of whether a GCA passing on a reduction in gas cost *could* result in an excess return. For example, the opinion used the model of a reduction in price causing an increase in demand, which in turn could increase profits and concluded "that it is *possible* for overearnings to result from decreased gas costs." *Indiana Gas,* 575 N.E.2d at 1048 (emphasis added). We do not believe this resolution meets the arguments Gas Co. makes here or the issue of the validity of the Commission's interpretation of the earnings test, and we conclude that the Commission should consider and decide that issue prior to further appellate review.

■ On the issue of whether the process of the Commission with respect the GCAs in these cases constitutes prohibited retroactive rate making, we conclude that this issue is resolved by *Indiana Gas.* We follow the decision there that "the rule against retroactive rate making does not apply to GCA proceedings." 575 N.E.2d at 1053. We also note that the purpose of the GCA is to establish *prospectively* the effective rate for the three month period covered by the GCA. Once whatever uncertainty that may exist about the application of the earnings test to GCAs is resolved, there may be no need for the refund method of finally establishing the effective GCA rate.

■ Finally, we address and resolve the fourth issue concerning the lack in GCA27 of specific language providing that the initial order allowing the credits proposed by Gas Co. was "subject to refund." As we have previously indicated, the initial order in GCA was designated as an "Order on Less than All Issues" and provided that, with respect to the return to be earned, "This issue will be addressed in a subsequent order." We hold that this language was sufficient to leave open the final deter-

---

**2.** The parties advance several other arguments on the res judicata issue. Because we find the argument that legislative determinations are not to be accorded res judicata effect to be determinative, we do not address these other arguments.

mination of the rate for the affected period until resolution of the "return to be earned" issue and to give adequate notice to Gas Co. that that issue remained open. It was not necessary that the initial order recite specifically that it was subject to refund.

In conclusion, we hold that the Commission's processing of these GCAs does not constitute prohibited retroactive rate making, that the Commission was not barred from ordering a refund in GCA27, and that the doctrine of res judicata does not preclude consideration of Gas Co.'s claims that increases by the Commission of the credits proposed by it in these GCAs is not authorized under the earnings test. We remand to the Commission for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

BARTEAU and RUCKER, JJ., concur.