**TELEDYNE PORTLAND FORGE, Appellant–Intervenor,**

v.

**OHIO VALLEY GAS CORPORATION and Office of Utility Consumer Counselor, Appellees–Petitioners.**

No. 93A02–9508–EX–457.

Court of Appeals of Indiana.

July 2, 1996.

John Wickes, Jr., Todd A. Richardson, Pamela H. Sherwood, Lewis & Kappes, Indianapolis, for appellant.

Larry J. Wallace, Rand D. Richey, Parr Richey Obremskey & Morton, Indianapolis, Anne E. Becker, Christopher C. Earle, Office of Utility Consumer Counselor, Indianapolis, for appellees.

## OPINION

GARRARD, Judge.

Teledyne Portland Forge appeals a series of adverse rulings by the Indiana Utility Regulatory Commission in proceedings conducted pursuant to the Gas Cost Adjustment (GCA) statute, Ind.Code § 8–1–2–42(g). The appeals were consolidated pursuant to Ind.Appellate Rule 5(B).

## FACTS

Beginning in the late 1970s, the federal government began to restructure the regulation of the natural gas industry. In April of 1992, the Federal Energy Regulatory Commission (FERC) issued Order 636, which was designed to complete the evolution to competition in the natural gas industry. Prior to Order 636, natural gas producers typically sold gas at regulated prices to interstate pipelines, which then resold the gas to local utilities for distribution to consumers. Thus, both the natural gas and the transportation service costs were "bundled" together in sales to the utilities. Order 636 required pipelines to "unbundle" these service costs. The purpose of Order 636 was to create competition so that all natural gas suppliers, including the pipeline merchant, would compete for gas purchasers on an equal footing, which would benefit all gas consumers by ensuring an adequate and reliable supply of natural gas at the lowest reasonable price. (Order 636 at 2, Appendix of Appellant). The implementation of Order 636 required significant alterations in the structure of interstate natural gas pipeline services, and as a result the pipelines incurred substantial "transition costs." FERC determined that the pipelines were entitled to "full cost recovery" from their customers of all prudently incurred transition costs. (Order at 192, 200, Appendix of Appellant).

Ohio Valley Gas Corporation is a state-regulated natural gas utility and a purchaser of pipeline services. Thus, it incurred these transition costs, which are paid through FERC-regulated pipeline rates. (R. 572–75; 594–95). As a result of the increased costs, Ohio Valley filed a petition with the Commission to recover these transition costs from its own customers. The ability of Ohio Valley to recoup these transition costs from its gas customers is not in dispute, as all parties concede that these costs are proper "gas costs" under the GCA statute. However, Teledyne only purchases transportation services, and not natural gas, from Ohio Valley. The dispute is whether Ohio Valley may collect these transition costs from its transportation customers.

■ In order to properly understand the procedural posture of this case, it may be helpful to give context to the issues by explaining the process by which a gas utility is permitted to adjust its charges to customers to reflect fluctuations in its cost of gas without going through a complete rate change proceeding. *See Indiana Gas Co. v. Office of Utility Consumer Counselor*, 610 N.E.2d 865, 867 (Ind.Ct.App.1993) (hereinafter *Indiana Gas III* ). This separate proceeding is referred to as a gas cost adjustment application and is covered by I.C. § 8–1–2–42(g). Under such a proceeding, the Commission holds a summary hearing on the sole issue of a gas cost adjustment. I.C. § 8–1–2–42(g)(1), (3). A utility may file an application within three months of its most recent application. I.C. § 8–1–2–42(g)(3). GCAs generally seek to pass through, on a dollar for dollar basis, any increase or decrease in gas cost the utility is experiencing. *Indiana Gas III*, 610 N.E.2d at 867. A GCA hearing is not intended to serve as a substitute for a general rate proceeding, but is rather intended to be a summary proceeding to determine gas cost adjustments. *Indiana Gas Co. v.*

*Office of Utility Consumer Counselor,* 575 N.E.2d 1044, 1049 (Ind.Ct.App.1991) (hereinafter *Indiana Gas I* ).

Ohio Valley filed its application for a gas cost adjustment on April 21, 1995, requesting recovery of transition costs incurred as a result of Order 636.[1] (GCA47). Teledyne intervened in this action, and the Commission held an evidentiary hearing on June 9, 1995. It was undisputed that the tariffs for Ohio Valley's gas customers included a provision specifically providing for GCA proceedings in order to adjust gas costs, while the tariffs for transportation customers, such as Teledyne, did not include such a provision. Thus, in order for Ohio Valley to collect transition costs from transportation customers, the transportation tariffs had to be amended. In support of its request to recover transition costs from its transportation customers, Ohio Valley presented testimony that the costs benefitted the entire natural gas industry; thus, it was fair to apportion the costs to all customers. Teledyne participated in the hearing but did not present any evidence.

The Commission issued its order in GCA47 on July 19, 1995. The Commission found that it had subject matter jurisdiction to determine gas costs and, as the "transition costs" were in fact gas costs, it could properly determine whether such costs could be recovered from transportation customers, even if an amendment to the tariff were necessary to collect the costs. The final order of the Commission in GCA47 authorized Ohio Valley to amend the tariff under which it provides service to Teledyne in order to recover a portion of the transition costs arising from Order 636.

## ISSUES AND DISCUSSION

Teledyne raises the following issues in its appeal:

I. Whether the Commission acted beyond its statutory authority by ordering a tariff amendment in a GCA proceeding.

II. Whether the Commission lacked jurisdiction as a result of a deficient public notice.

III. Whether the evidence at the hearing supports the imposition of a surcharge for the collection of transition costs from transportation customers of Ohio Valley.

## ISSUE I

Teledyne's first argument is that the Commission acted beyond its statutory authority by permitting a tariff amendment in a GCA proceeding. We conclude that the Commission did have the authority under the GCA statute to reach this issue.

 Teledyne asks us to review the Commission's interpretation of its authority under I.C. 8–1–2–42(g). When we review the decision of an administrative agency, we are not bound by its interpretations of law, and we are free to determine any legal question which arises out of its decision. *Indiana Gas III,* 610 N.E.2d at 869. Whenever an agency interprets its own statute, we accord its interpretation great weight, but we are not bound by the agency's interpretation and should reverse if the agency incorrectly interpreted the statute. *Id.*

The GCA statute provides:

No schedule of rates, tolls, and charges of a public, municipally owned, or cooperatively owned gas utility that includes or authorizes any changes in charges based upon gas costs is effective without the approval of the commission except those rates, tolls, and charges contained in schedules that contain specific provision for changes in gas costs or the cost of gas that have previously been approved by the commission....

I.C. § 8–1–2–42(g). A summary hearing shall be held on the sole issue of the gas cost adjustment, subject to the notice requirements of I.C. § 8–1–1–8. I.C. § 8–1–2–42(g)(3). We have previously noted that the summary nature of the hearing evidences a clear legislative intent to preclude the use of the GCA proceeding as an abbreviated rate

---

1. Ohio Valley also requested recovery of transition costs in a prior GCA proceeding, GCA42, in which Teledyne was an intervening party. The

Commission deferred resolution of this issue until its order in GCA47.

case. *Indiana Gas I*, 575 N.E.2d at 1049 (holding that a gas utility may not update its rate base in a GCA proceeding).

The general rate proceeding statute contains the following relevant provisions:

A public, municipally owned, or cooperatively owned utility may not file a request for a general increase in its basic rates and charges within fifteen (15) months after the filing date of its most recent request for a general increase in its basic rates and charges....

The phrase "general increase in basic rates and charges" does not include changes in rates related solely to the cost of fuel or to the cost of purchased gas ... or adjustments in accordance with tracking provisions approved by the commission.

I.C. § 8–1–2–42(a).

■ Teledyne contends that the language of the GCA statute only provides for gas cost adjustments pursuant to tariffs with previously approved provisions specifically authorizing adjustments for changes in gas costs. Teledyne further argues that the tariff amendment permitting recovery for transition costs is a general increase in basic rates and charges, requiring a general rate proceeding. Ohio Valley counters that a general increase in basic rates and charges does not include adjustments in accordance with a tracking provision which has been approved by the Commission, and that the GCA statute authorizes the Commission to approve any change in a rate schedule which is based upon a change in gas costs.

■ There is no question that the transition costs are gas costs and thus may be applied for in a GCA proceeding. While a GCA proceeding is a summary, more abbreviated hearing, if the Commission has the authority to adjust gas costs, it must necessarily have the authority to approve the mechanism necessary to implement the adjustment, including a tariff amendment. In *Indiana Gas I*, we concluded that "the time and subject matter constraints imposed by the legislature on the GCA proceeding are simply incompatible with a comprehensive re-evaluation of a gas utility's rate base." *Indiana Gas I*, 575 N.E.2d at 1050. However, with regard to the issue before us, there is no indication that a comprehensive evaluation process is necessary to reach a resolution. Indeed, we cannot discern any disadvantage to making such a determination in a GCA proceeding, or any particular advantage to doing so in a general rate case. The amendment at issue does not constitute a "general increase in basic rates and charges." I.C. § 8–1–2–42(a). Rather, it is more appropriately an "adjustment in accordance with tracking provisions approved by the commission." I.C. § 8–1–2–42(a). There is nothing in the statute requiring such a tracking provision to be approved in a general rate case. At issue was an adjustment of gas costs and the approval of an amendment to the tariff to implement the adjustment. The Commission had the authority to address this issue.[2]

## ISSUE II

■ Teledyne next argues that the Commission lacked jurisdiction to amend the transportation tariff because the public notice of the hearing was deficient.

Teledyne filed a motion to dismiss in the GCA proceeding, arguing that the public notice required by statute was deficient as it failed to indicate that Ohio Valley sought to amend the transportation tariffs and therefore did not properly notify transportation customers that their interests would be affected by the proceeding.

■ Our review of an administrative decision includes the determination of whether the agency possesses jurisdiction over the subject matter. *Natural Resources Com'n v. Sugar Creek Mobile Estates*, 646 N.E.2d 61, 63–64 (Ind.Ct.App.1995), *reh'g denied, trans. denied*. The GCA statute requires the Commission to conduct a summary hearing on a

---

**2.** Our review is limited to matters properly in the record of the proceedings below. Matters included in an appendix are not a part of the record, and we therefore may not consider them. *Frances Slocum Bank and Trust Co. v. In the* *Matter of the Estate of Max D. Martin*, Ind.App., 666 N.E.2d 411, 413 n. 2 (1996). Thus, the parties' inclusion in their appendices of other Commission orders upon the same issue before us may not be considered.

GCA application subject to the notice requirements of I.C. § 8–1–1–8. This statute states in relevant part:

> Whenever the utility regulatory commission shall order a hearing in any proceeding instituted by or against any public utility, notice of the hearing shall be given by one (1) publication appearing not less than ten (10) days prior to the date fixed for the hearing in two (2) newspapers of general circulation published in one (1) county wherein reside patrons or customers of the public utility who might be affected by an order made by the commission pursuant to the hearing....

I.C. § 8–1–1–8(b). In addition to the public notice, the Commission shall mail notice of the hearing to all persons having competitive interests involved; however, the failure to mail the notices is not jurisdictional. I.C. § 8–1–1–8(c).

Thus, the statute requires notice to be published in papers of general circulation sufficient to reach those who might be affected by an order. The statute does not articulate the content and specificity of the required notice. Teledyne's allegation, which the Commission found to be "persuasive," was that the notice did not state all requested relief because it did not indicate that it sought to amend any tariffs, but rather simply stated that it sought to increase gas costs.[3] However, it is the Indiana Administrative Code which states that the caption of a petition shall describe in general terms all relief being sought. 170 IAC 1–1–8(b). While the Commission found that the notice was lacking in this respect, it did find that it had subject-matter jurisdiction.

We conclude that the Commission properly determined that Ohio Valley had failed to comply with its administrative rule, but not with the notice statute. The statute does not specify the required content of the notice, but rather details how and when the notice must be published. The specific content requirements of the notice have been left to the determination of the Commission through its administrative rules. I.C. § 8–1–2–47 ("The commission shall have the power ... to adopt and publish reasonable and proper rules to govern its proceedings ...."); *see City of Evansville v. Southern Indiana Gas & Elec. Co.*, 167 Ind.App. 472, 339 N.E.2d 562, 578 (1975) (a review of the statutory scheme clearly indicates that the case-by-case determination of what constitutes adequate public notice has been legislatively committed to the Commission's informed discretion). The Commission chose to rectify any defect by requiring Ohio Valley to publish a more detailed notice in its next GCA application. As the Commission found that Ohio Valley failed to comply with its administrative rules, it was entitled to correct this omission on its own. *See Adkins v. City of Tell City*, 625 N.E.2d 1298, 1302 (Ind.Ct.App. 1993). The Commission had subject matter jurisdiction upon the publication of notice and did not act outside of its authority.

## ISSUE III

█ Finally, Teledyne argues that there is not substantial evidence to support the imposition of a surcharge to recover gas costs from customers that do not purchase gas.

█ In reviewing a decision of the Commission, we may reverse only if the decision is unsupported by substantial evidence on the record or the decision is contrary to law. *Indiana Gas III*, 610 N.E.2d at 869. A decision is supported by substantial evidence if the Commission's findings have a reasonably sound basis of evidentiary support based on a review of the record in its entirety. *Alcoholic Bev. Com'n v. River Road Lounge*, 590 N.E.2d 656, 658 (Ind.Ct.App.1992), *trans. denied*. We may not reweigh the evidence in the process of determining whether the Commission's decision was supported by substantial evidence, and we may not substitute our judgment for that of the Commission. *Id.* We are governed by the presumption that an agency's decision is correct in view of its expertise. *Columbus Bd. of Zoning Appeals*

---

**3.** In response to Teledyne's argument, the Commission ordered Ohio Valley in its next GCA application to specifically include its request for an amendment to the transportation rates in both public notices and notices to be mailed to all affected customers. The Commission also concluded that Teledyne had actual notice of the proceedings and the opportunity to participate, and thus found no denial of due process. Teledyne does not challenge this conclusion.

*v. Wetherald,* 605 N.E.2d 208, 211 (Ind.Ct. App.1992), *reh'g denied, trans. denied.*

In reviewing the record as a whole, we conclude that the Commission's findings have a reasonably sound basis of evidentiary support.[4] Lloyd Spencer, Vice President and General Manager of Ohio Valley, testified in prefiled testimony regarding the costs associated with the transition of the interstate pipeline system from being a bundled service entity to an unbundled service entity, thus providing all end users access to the interstate pipeline facilities. (R. 575). Spencer further noted that "all presumably will enjoy the benefits of this unbundling of the city gate stations services by the interstate pipelines, [and] all presumably will be expected to pay for the costs associated with the applicable conversion." (R. 575–76). Spencer went on to indicate that the allocation of the transition costs should be made on a pro rata basis to all classes of service. At the hearing on GCA42, Spencer also testified under cross-examination, noting that the premise of Order 636 is that all users of the natural gas system will benefit from the restructuring to create "open access" and, since all will benefit, the fairest method of allocating the transition costs would be to spread them to all classes of users. (R. 646–647).

In its order in GCA47 the Commission found:

> [T]ransition costs ... are FERC approved costs allocated to [Ohio Valley] and required to be paid by [Ohio Valley] in order to provide service to its customers. We believe on this basis such costs are properly allocated to all customers on a volumetric basis as they are the type of costs that are properly tracked as a federally approved cost to provide service to the utility's customers.

(R. 178). This finding is reasonably supported by the evidence; a reversal by this court would constitute a substitution of our judgment for that of the Commission, and this we may not do.

In all respects the Commission's order is affirmed.

HOFFMAN and ROBERTSON, JJ., concur.

---

4. The evidentiary record of GCA42 was incorporated into the record for GCA47. Teledyne, while participating in the hearings and cross-examining witnesses, did not offer any evidence.