KIEL BROTHERS OIL COMPANY, INC., Appellant–Petitioner,

v.

The INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT and The Office of the Indiana Attorney General, Appellees–Respondents.

No. 49A02–0404–CV–324.

Court of Appeals of Indiana.

Dec. 30, 2004.

Christopher J. Braun, Jeffrey D. Claflin, Amy E. Romig, Plews Shadley Racher & Braun, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Timothy J. Junk, Deputy Attorneys General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Kiel Brothers Oil Company, Incorporated ("Lessee") appeals

the trial court's judgment in favor of Appellees–Defendants the Indiana Department of Environmental Management ("IDEM") and the Office of the Indiana Attorney General ("Attorney General"). We affirm.

## Issue

Lessee raises one issue, which we restate as whether the trial court erred by affirming the judgment of the Office of Environmental Adjudication ("OEA"), which concluded that Lessee was not entitled to third-party indemnification pursuant to Indiana Code Section 13–23–9–3.

## Facts and Procedural History

### I. Background

The relevant facts are undisputed. From 1962 to February of 1999, Hukill Oil Company ("Lessor") owned certain real property located at 219 North Clifty Avenue in Madison, Indiana, on which a gasoline service station ("Station") with three underground storage tanks ("UST's") was operated (hereinafter referred to as the "Property"). From May of 1987 to May of 1997, Lessee leased the Property from Lessor and operated the Station, along with the UST's. As part of its lease agreement with Lessor, Lessee "owned and operated the [UST's] at the Station and reg-

istered them with IDEM." Appellant's App. at 661. During the lease agreement, Lessee paid all of the applicable statutory UST registration fees.[1]

After the lease expired in 1997, Lessor resumed operation of the Station and, thus, registered the UST's in its own name with IDEM. Subsequently, Lessor discovered petroleum contamination on the Property and reported it to IDEM. Lessor then performed corrective action to cleanup the contamination and, in so doing, incurred costs.

### II. Lessor's First–Party Claim for Reimbursement

Because the UST registration fees were paid at all times pertinent to the contamination, Lessor, i.e., the owner of the UST's, "was entitled to and did submit a [first-party] claim for reimbursement of its corrective action costs from the Excess Liability Trust Fund [("ELTF").]" Appellant's App. at 236. The ELTF paid Lessor $189,469.64 and denied reimbursement in the amount of $48,209.14, which represented the $35,000.00 deductible and $13,209.14 of other remediation expenses. In particular, the ELTF denied or disallowed the following relevant amounts:

| Vendor | Invoice Number | Amount Disallowed | Reason |
|---|---|---|---|
| Montgomery Environmental ("Montgomery") | 8/11/97 | $6,000.00 | "Costs associated with work performed prior to the day the incident report was received by IDEM are not eligible for reimbursement." |

1. Indiana Code Section 13–23–12–1, governing UST's registration fees, provides:
   (a) Each year the *owner* of an underground storage tank that has not been closed before July 1 of any year under:
   (1) rules adopted under IC 13–23–1–2; or
   (2) a requirement imposed by the commissioner before the adoption of rules under IC 13–23–1–2;
   shall pay to the department of state revenue an annual registration fee.
   (b) The annual registration fee required by this section is as follows:
   (1) Ninety dollars ($90) for each underground petroleum storage tank.
   (2) Two hundred forty-five dollars ($245) for each underground storage tank containing regulated substances other than petroleum.
   (c) If an underground storage tank consists of a combination of tanks, a separate fee shall be paid for each tank.
   (Emphasis added).

| Vendor | Invoice Number | Amount Disallowed | Reason |
|---|---|---|---|
| Montgomery | 5/1/97 | $ 100.00 | "Costs associated with work performed prior to the day the incident report was received by IDEM are not eligible for reimbursement" |
| Montgomery | 2/11/98, 2/24/98, 3/20/98 | $ 375.00 | "[C]onsultant 'MARK–UPS' on contracted work are not reimbursable" |
| | | $ 661.75 | "[C]onsultant 'MARK–UPS' may not exceed more than 15% of the total cost of the line item activity." |
| | | $1,550.00 | "The evidence submitted failed to show that the activity was necessary to perform the corrective action or third party liability." |
| | | $ 900.00 | "The submitted documentation failed to show the costs were not for duplicate supervision or work performed regarding the interviewing of former employees." |
| | | $ 500.00 | "Per diem is permitted with only overnight stays. The submitted documentation does not demonstrate that lodging costs were paid." |
| Montgomery | 99 | $ 104.55 | "The maximum amount reimbursed for copying is $.15 cents per page, for black and white and colored copies." |
| Montgomery | 134 | $ 24.75 | "[C]onsultant 'MARK–UPS' may not exceed more than 15% of the total cost of the line item activity." |
| Montgomery | 167 | $ 49.50 | "[C]onsultant 'MARK–UPS' may not exceed more than 15% of the total cost of the line item activity." |
| Montgomery | 187 | $ 2.40 | "[M]ileage incurred post July 1, 1997 is reimbursable at $0.28 cents per mile." |
| Montgomery | 225 | $ 2.40 | "[M]ileage incurred post July 1, 1997 is reimbursable at $0.28 cents per mile." |
| Montgomery | 283 | $ 4.80 | "[M]ileage incurred post July 1, 1997 is reimbursable at $0.28 cents per mile." |
| Lees Aggregate & Trucking | 1506 | $ 93.26 | "[B]ackfill material is reimbursable at a rate of $10 per cu.yd." |
| Lees Ready Mix & Trucking | 79704 | $ 90.00 | "[B]ackfill material is reimbursable at a rate of $10 per cu.yd." |
| Outer Loop RDF | 2482– 0004966 | $ 0.80 | |
| Montgomery | 255 | $ 310.50 | "Required back-up documentation regarding lab analysis is 1) If the company that is performing the site remediation also owns the lab, then the results of the analysis must be supplied.  2) If the company that is performing the site remediation hires a sub-contractor (outside lab) to perform analysis, then the invoice from the outside contractor is sufficient back-up." |
| | | $ 2.40 | "[M]ileage incurred post July 1, 1997 is reimbursable at $0.28 cents per mile.  Vehicle usage fees are not reimbursable." |

| Vendor | Invoice Number | Amount Disallowed | Reason |
|---|---|---|---|
| Montgomery | 270 | $ 570.00 | "Costs associated with the preparation of [ELTF] applications are not eligible for reimbursement." |
| Montgomery | 298 | $ 310.50 | "Required back-up documentation regarding lab analysis is 1) If the company that is performing the site remediation also owns the lab, then the results of the analysis must be supplied. 2) If the company that is performing the site remediation hires a sub-contractor (outside lab) to perform analysis, then the invoice from the outside contractor is sufficient back-up." |
|  |  | $ 4.05 | "[M]ileage incurred post July 1, 1997 is reimbursable at $0.28 cents per mile. Vehicle usage fees are not reimbursable." |
| Montgomery | 333 | $ 310.50 | "Required back-up documentation regarding lab analysis is 1) If the company that is performing the site remediation also owns the lab, then the results of the analysis must be supplied. 2) If the company that is performing the site remediation hires a sub-contractor (outside lab) to perform analysis, then the invoice from the outside contractor is sufficient back-up." |
|  |  | $ 4.50 | "[M]ileage incurred post July 1, 1997 is reimbursable at $0.28 cents per mile. Vehicle usage fees are not reimbursable." |
| Montgomery | 339 | $ 80.00 | "[Lessor] failed to provide copies of invoices, a letter from the contractor, or other documentation explaining and/or justifying the claimed cost." |
|  |  | $ 6.25 | *Id.* |
|  |  | $ 4.73 | "[M]ileage incurred post July 1, 1997 is reimbursable at $0.28 cents per mile. Vehicle usage fees are not reimbursable." |
| Montgomery | 369 | $ 310.50 | "Required back-up documentation regarding lab analysis is 1) If the company that is performing the site remediation also owns the lab, then the results of the analysis must be supplied. 2) If the company that is performing the site remediation hires a sub-contractor (outside lab) to perform analysis, then the invoice from the outside contractor is sufficient back-up." |
|  |  | $ 50.00 | "The maximum allowable reimbursement for monitoring well sampling is a flat fee of $50.00 per well." |
|  |  | $ 7.00 | "[M]ileage incurred post July 1, 1997 is reimbursable at $0.28 cents per mile. Vehicle usage fees are not reimbursable." |

| Vendor | Invoice Number | Amount Disallowed | Reason |
|---|---|---|---|
| Montgomery | 405 | $ 310.50 | "Required back-up documentation regarding lab analysis is 1) If the company that is performing the site remediation also owns the lab, then the results of the analysis must be supplied. 2) If the company that is performing the site remediation hires a sub-contractor (outside lab) to perform analysis, then the invoice from the outside contractor is sufficient back-up." |
| | | $ 7.00 | "[M]ileage incurred post July 1, 1997 is reimbursable at $0.28 cents per mile. Vehicle usage fees are not reimbursable." |
| Montgomery | 443 | $ 310.50 | "Required back-up documentation regarding lab analysis is 1) If the company that is performing the site remediation also owns the lab, then the results of the analysis must be supplied. 2) If the company that is performing the site remediation hires a sub-contractor (outside lab) to perform analysis, then the invoice from the outside contractor is sufficient back-up." |
| | | $ 12.00 | "[T]he maximum hourly rate allowed for a senior Technician is $50.00 per hour." |
| Montgomery | 467 | $ 289.00 | "Required back-up documentation regarding lab analysis is 1) If the company that is performing the site remediation also owns the lab, then the results of the analysis must be supplied. 2) If the company that is performing the site remediation hires a sub-contractor (outside lab) to perform analysis, then the invoice from the outside contractor is sufficient back-up." [2] |

Lessor did not seek administrative review of these denied or disallowed claims pursuant to Indiana Code Section 13–23–9–2(g).[3]

**2.** *See* Appellant's App. at 459–60, 463–66, 468, 472–73.

**3.** Indiana Code Section 13–23–9–2(g) provides:

If a reason the administrator denies a request made under subsection (b) is for failure to meet the requirements of subsection (b)(1), the administrator shall notify the claimant in writing not later than sixty (60) days after receiving the request. The claimant has thirty (30) days from the receipt of the denial to notify the administrator of the claimant's intention to appeal the denial. If the claimant does not notify the administrator of an intention to appeal in the time provided, further review of the application is not required. If an intention to appeal is submitted within the time provided, the administrator has thirty (30) days after the receipt of the notice of the intention to appeal to provide the claimant with all additional reasons for the denial or partial denial of the request or to specify that all reasons have been provided. *The claimant has thirty (30) days after receiving notification from the administrator of all additional reasons for the denial or partial denial or notice specifying that all reasons have been provided to file a petition for review of the denial or partial denial.* (Emphasis added).

### III. Lessor's Complaint Against Lessee and the Subsequent Settlement Agreement

In February of 1998, Lessor filed a complaint against Lessee, alleging that the petroleum contamination on the Property resulted from Lessee's operation of the Station and UST's and seeking remediation costs, attorney fees, lost rent, interest, and other damages. Lessee denied that its operation of the Station and UST's caused the petroleum contamination. Nevertheless, Lessee filed an application with the ELTF to determine eligibility for reimbursement of a third-party claim.[4] In response, on July 10, 2000, IDEM confirmed that Lessee's claim is eligible for up to 100% of the reimbursement costs. On October 12, 2001, Lessor and Lessee executed a Settlement Agreement whereby Lessor agreed to accept $200,986.41 in full settlement of all of its claims against Lessee, and Lessee agreed to submit a third-party claim to the ELTF requesting payment in the amount of $230,986.41, which consisted of Lessor's damages totaling $200,986.41 and legal fees of $30,000.00.

The Settlement Agreement contains the following provision:

> 15. *No Third–Party Beneficiary.* This Agreement is intended to confer rights and benefits only on [Lessor] and [Lessee] and is not intended to confer any right or benefit upon any other person or entity. No person or entity other than [Lessor] and [Lessee] shall have any legally enforceable right under this Agreement. All rights of action for any breach of this Agreement are hereby reserved to [Lessor] and [Lessee.]

Appellant's App. at 246–47. Pursuant to the Settlement Agreement, the parties filed with the trial court a joint stipulation of stay, pending the outcome of Lessee's third-party indemnification claim against the ELTF.

### IV. Lessee's Third–Party Claim for Reimbursement

On November 2, 2001, Lessee submitted its application for a third-party indemnification claim to the ELTF, for the coverage period of October 15, 1997 to October 12, 2001.[5] Specifically, Lessee sought indemnification of a third party, i.e., Lessor, in the claimed amount of $230,986.41, which included lost rent due to the contamination, out-of-pocket cleanup expenses, mediation expenses, interest costs, and the statutory maximum of $30,000.00 in attorney fees.[6] To support these claimed expenses, Lessee submitted four exhibits: (1) Exhibit Four regarded the cleanup expenses paid by Lessor, i.e., the alleged third party; (2) Exhibit Five concerned the mediator's fee; and (3 and 4) Exhibits Six and Seven regarded the parties' attorney fees. Exhibit Four, for example, contained the

---

4. Initially, Lessee filed a "zero claim"—i.e., the standard claim form with no costs attached-to request a determination regarding its eligibility to submit corrective action costs for reimbursement from the ELTF.

5. Interestingly, Lessee only operated the Station and UST's from May of 1987 to May of 1997.

6. Title 328 of the Indiana Administrative Code provides, in relevant part, as follows:

> Persons listed in section 1 of this rule may seek payment from the [ELTF] for reasonable costs of the type described below if the costs are actually incurred and necessary to site characterization or corrective action.
> * * * * *
> (7) Attorney fees, not to exceed twenty-five percent (25%) of the total claim or thirty thousand dollars ($30,000), whichever is less, shall only be payable if incurred by the owner or operator in defense of a third party liability claim.

Ind. Admin. Code tit. 328, 1–3–5(a)(7) (2001).

following information regarding Lessee's expenses:

| Vendor | Invoice Number | Amount |
|---|---|---|
| Lessor out of Pocket Expense | | $35,000.00 |
| Montgomery | 8/1/97 | $ 6,000.00 |
| Montgomery | 5/1/97 | $ 100.00 |
| Montgomery | 2/11/98, 2/24/98, 3/20/98 | $ 3,836.75 |
| Montgomery | 99 | $ 104.55 |
| Montgomery | 134 | $ 24.75 |
| Montgomery | 167 | $ 49.50 |
| Montgomery | 187 | $ 2.40 |
| Montgomery | 225 | $ 2.40 |
| Montgomery | 283 | $ 4.80 |
| Lees Aggregate & Trucking | 1506 | $ 93.26 |
| Lee's Ready Mix & Trucking | 79704 | $ 90.00 |
| Outer Loop RDF | 2482–0004966 | $ 0.80 |
| Montgomery | 255 | $ 312.90 |
| Montgomery | 270 | $ 570.00 |
| Montgomery | 298 | $ 314.55 |
| Montgomery | 333 | $ 315.00 |
| Montgomery | 339 | $ 90.98 |
| Montgomery | 369 | $ 367.50 |
| Montgomery | 405 | $ 317.50 |
| Montgomery | 443 | $ 322.50 |
| Montgomery | 467 | $ 289.00 |
| Total | | $48,209.14 |

Appellant's App. at 680.

In conjunction with its application and pursuant to Indiana Code Section 13–23–9–3, Lessee requested that the Attorney General deem the Settlement Agreement a "reasonable settlement" so that the application to ELTF would be promptly approved. On December 20, 2001, the Attorney General denied Lessee's third-party claim because: (1) the Settlement Agreement did not involve a third-party, rather it involved merely an owner and an operator; (2) the documents supporting the application do not support a reimbursement claim in the amount of $230,986.41; (3) some of the reimbursement costs do not appear to be reimbursable—i.e., the $35,000.00 deductible and the costs submitted by Lessor that have already been disallowed; and (4) the Settlement Agreement is not an enforceable final agreement because it is contingent upon ELTF approval. On November 21, 2001, IDEM, on behalf of the ELTF, denied Lessee's application based upon the Attorney General's determination.

At Lessee's insistence, the Attorney General reconsidered its denial of Lessee's ELTF claim. In reaffirming its denial, the Attorney General noted:

The ELTF does not operate as an insurance policy per se. Instead, the presence of each regulated tank triggers the duty to pay the annual fee for that tank. There is only one payment per tank per year, intentionally to provide that multiple owners/operators of a site during any given year are paying the same tank fee as a sole proprietor.

Thus, the ELTF benefits for multiple owners/operators should be no greater than any benefits available to a sole proprietor.

As the owner, [Lessor] submitted a first party claim, which IDEM honored after [Lessor] paid the deductible specified by the statute. Thereafter, [Lessor] sued [Lessee,] and [Lessor] has construed its settlement as a third party claim. Under your attempted construction of the statute, any owner (first party) could avoid the deductible by simply suing the lessee (second party) who would erroneously call its agreement to pay the deductible a "third party settlement." However, there is no third party in this scenario, hence no third party liability settlement....

Appellant's App. at 210.

After the denial of its claim against the ELTF, Lessee paid Lessor the settlement amount of $200,986.41 and the parties executed a stipulation to dismiss the stayed lawsuit with prejudice. In so doing, Lessor agreed that Lessee would retain any money it recovered from the ELTF on its third-party indemnification claim.

## V. Commencement of the Present Litigation

With respect to the denial of its application to the ELTF, Lessee timely filed an appeal for administrative relief with the OEA. Apparently, in response, IDEM and the Attorney General filed motions for summary judgment, and Lessee filed a cross motion for summary judgment with the OEA. The only issue considered by the OEA was whether Lessee is eligible for ELTF funds to reimburse Lessor as a third-party claimant. Ultimately, the OEA granted summary judgment to the Attorney General and IDEM, thereby affirming the denial of Lessee's third party claim. In so doing, the OEA concluded that Lessor is not a third-party claimant under 328 Indiana Administrative Code Section 1–1–10[7] and that Lessor, as the owner of the Property, and Lessee, as the operator of the Station and UST's, are jointly and severally liable for the cleanup of the petroleum contamination.

On May 23, 2003, pursuant to Indiana Code Section 4–21.5–5–2,[8] Lessee sought judicial review of the OEA's grant of summary judgment in the Marion Superior Court. Lessee also moved for summary judgment in the state court action. After conducting a hearing, the trial court affirmed the order of the OEA and, thus, denied Lessee's motion for summary judgment. It is from this order that Lessee now appeals.

## Discussion and Decision

### I. Standard of Review

Lessee appeals the trial court's decision to affirm the OEA's denial of its

---

7. Title 328 of the Indiana Administrative Code provides:

Third party liability is the damage a tank owner or operator is legally obligated to pay for injury, expense, and damage suffered by a third party as the result of a release. Third party liability includes bodily injury and property damage.

Ind. Admin. Code tit. 328, 1–1–10(a) (2001).

8. Indiana Code Section 4–21.5–5–2 provides:

(a) Judicial review is initiated by filing a petition for review in the appropriate court.

(b) Only a person who qualifies under:
(1) section 3 of this chapter concerning standing;
(2) section 4 of this chapter concerning exhaustion of administrative remedies;
(3) section 5 of this chapter concerning the time for filing a petition for review;
(4) section 13 of this chapter concerning the time for filing the agency record for review; and
(5) any other statute that sets conditions for the availability of judicial review; is entitled to review of a final agency action.

motion for summary judgment and grant of summary judgment to IDEM and the Attorney General. When reviewing the decision of an administrative agency, this Court is bound by the same standard of review as the trial court. *Andrianova v. Ind. Family & Social Serv. Admin.*, 799 N.E.2d 5, 7 (Ind.Ct.App.2003). An administrative decision should be reversed only if it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. *See* Ind.Code § 4–21.5–5–14(d); *Ind. Dep't of Envtl. Mgmt. v. Adapto, Inc.*, 717 N.E.2d 646, 649 (Ind. Ct.App.1999). However, we are free to determine any legal question that arises out of the administrative agency's decision and are not bound by its interpretation of the law. *Ind. Gas Co. v. Office of Utility Consumer Counselor*, 610 N.E.2d 865, 869 (Ind.Ct.App.1993). Rather, the law is the province of the judiciary. *Cowper v. Collier*, 720 N.E.2d 1250, 1255 (Ind.Ct.App. 1999), *reh'g denied, trans. denied.*[9]

## II. Relevant Statutory Background: The Underground Storage Tank Act and the ELTF

The present controversy arises out of the cleanup of a petroleum contamination, resulting from the three UST's located on the Property, which was leased from Lessor to Lessee. The Indiana Underground Storage Tank Act ("Indiana Act") provides, in part:

A person who ... undertakes corrective action resulting from a release from an underground storage tank, regardless of whether the corrective action is undertaken voluntarily or under an order issued under this chapter, ... *is entitled to receive a contribution from a person who owned or operated the underground storage tank at the time the release occurred.* A person who brings a successful action to receive a contribution from an owner or operator is also entitled to receive reasonable attorney's fees and court costs from the owner or operator.

Ind.Code § 13–23–13–8 (emphasis added).

■ The Indiana Act was "drafted in the same language and spirit" as the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601. *Western Ohio Pizza, Inc. v. Clark Oil & Refining Corp.*, 704 N.E.2d 1086, 1090 (Ind.Ct.App.1999), *trans. denied.* The Indiana Underground Storage Tank Act follows the same remedial principles established by CERCLA. *Id.* "Liability under CERCLA is strict-no showing of negligence is required." *Id.* (quoting *Rodenbeck v. Marathon Petroleum Co.*, 742 F.Supp. 1448, 1456 (N.D.Ind. 1990)).

In addition, with respect to the owner or operator's contribution under the Indiana Act, the Indiana Legislature has established the ELTF. Indeed, the ELTF was created, in part, to (1) assist owners and operators of underground petroleum storage tanks to establish evidence of financial

9. At the outset, we observe that the trial court both affirmed the OEA's decision in favor of IDEM and the Attorney General and denied Lessee's motion for summary judgment. Because the denial of Lessee's motion for summary judgment was secondary to the trial court's decision to affirm the OEA's judg- ment, we do not employ the summary judgment standard of review. However, even if we were to employ summary judgment principles, the resulting standard of review would be de novo. Thus, the result of our analysis would remain unchanged.

responsibility as required by Indiana Code Section 13–23–4; (2) provide a source of money to satisfy liabilities incurred by owners and operators of UST's under Indiana Code Section 13–23–13–8 for corrective action; and (3) provide a source of money for the indemnification of third parties under Indiana Code Section 13–23–9–3. *See* Ind.Code § 13–23–7–1.

The ELTF is funded with registration fees, penalties for nonpayment of registration fees, appropriation from the general assembly, gifts and donations, inspection fees, bond revenue, and any other money authorized to be deposited in or appropriated to the trust fund. *See* Ind.Code § 13–23–7–2. Indiana Code Section 13–23–12–1, for example, requires the "owner" of an underground storage tank to pay an annual registration fee in the amount of two hundred and ninety dollars for *each* underground petroleum storage tank. "Owner," for purposes of Indiana Code 13–23, is defined in part as:

(1) for an underground storage tank that was:

(A) in use on November 8, 1984; or

(B) brought into use after November 8, 1984;

for the storage, use, or dispensing of regulated substances, *a person who owns the underground storage tank.*

Ind.Code § 13–11–2–150 (emphasis added).

To receive money from the ELTF for payment of any costs, *excluding* liabilities to third parties and the costs of repairing or replacing an UST, a claimant must submit a corrective action plan to the administrator of the ELTF for the administrator's approval, along with a copy of a receipt for work that has been performed. Ind.Code §§ 13–23–9–2, 13–23–8–1(1). By contrast, to receive money from the ELTF for payment of part of the liability of UST owners and operators to third parties, or for reasonable attorney fees incurred in the defense of a third party liability claim, a claimant must "submit to the administrator a request for indemnification of a third party containing any information required by the administrator," and "forward a copy of the request . . . to the attorney general for the attorney general's approval." Ind. Code §§ 13–23–9–3, 13–23–8–1(2). Armed with this brief introduction to the Indiana Act and the ELTF, we now address Lessee's claim of error.

## III. Analysis

■ Lessee argues that the trial court erred by affirming the OEA's denial of its motion for summary judgment and simultaneous grant of summary judgment in favor of IDEM and the Attorney General. In particular, Lessee contends that the OEA erroneously concluded that Lessee is not entitled to indemnification from the ELTF because Lessor, i.e., the owner of the UST's in question, is not a third party pursuant to Indiana Code Sections 13–23–8–1(2) and 13–23–9–3. Indiana Code Section 13–23–8–1(2) mandates IDEM to use money in the ELTF, to the extent that such money is available, "to pay claims submitted to the department for . . . [p]roviding payment of part of the liability of owners and operators of underground petroleum storage tanks . . . to third parties under IC 13–23–9–3."

In addition, Indiana Code Section 13–23–9–3, which delineates the requirements for a claimant to receive money from the ELTF, provides, in pertinent part:

(a) To receive money from the excess liability trust fund under IC 13–23–8–1(2), a claimant must:

(1) submit to the administrator a request for indemnification of a third party containing any information required by the administrator; and

(2) forward a copy of the request under subdivision (1) to the attorney gener-

al for the attorney general's approval.

However, neither of these code sections defines the phrase "third party." Moreover, while Title 328 of the Indiana Administrative Code defines "third party liability" as "the damage a tank owner or operator is legally obligated to pay for injury, expense, and damage suffered by a third party as the result of a release," it, too, does not define the term "third party." *See* Ind. Admin. Code tit. 328, 1–1–10(a) (2001). As such, the specific issue before us, which is one of first impression in Indiana, requires us to engage in statutory construction to determine whether an operator, i.e., Lessee, leasing certain UST's from an owner, i.e., Lessor, is entitled to third-party indemnification from the ELTF when: (1) the operator paid the statutory registration fees to the ELTF, in lieu of the owner; (2) a petroleum contamination resulted from the *operation* of the UST's; (3) the owner incurred expenses in remediating the contamination; (4) the owner sought first-party reimbursement from the ELTF and received partial compensation; and (5) the operator has subsequently paid the remainder of the remediation expenses to the owner, as well as attorney fees and other costs.

Statutory interpretation is a question of law reserved for the court and is reviewed de novo. *Shaffer v. State*, 795 N.E.2d 1072, 1076 (Ind.Ct.App.2003). De novo review allows us to decide an issue without affording any deference to the trial court's decision. *Id.* When statutes have not been previously construed, such as Indiana Code Sections 13–23–8–1(2) and 13–23–9–3, our interpretation is controlled by the express language of the statutes and the rules of statutory construction. *Id.* Our goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *Id.*

It is a general rule of statutory construction that undefined words and phrases in a statute are given their plain, ordinary and usual meaning. Ind.Code § 1–1–4–1(1). Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *Walling v. Appel Serv. Co.*, 641 N.E.2d 647, 649 (Ind.Ct.App.1994). According to its plain and ordinary meaning, a "third party" is "[a] person other than the principals." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2378 (2002). In fact, Black's Law Dictionary defines the phrase "third party" as "[o]ne who is not a party to a lawsuit, agreement, or other transaction but who is somehow involved in the transaction; someone other than the principal parties," i.e., an outside party. BLACK'S LAW DICTIONARY 1489 (7th ed 1999).

In the present case, Lessee contends that it is entitled to third-party indemnification from the ELTF because Lessee operated the UST's in question and paid all of the annual registration fees to the ELTF. Accordingly, Lessee's argument continues, Lessor, i.e., the owner of the three UST's, was a third party to the relationship between Lessee and the ELTF and is, thus, a third party within the spirit and meaning of Indiana Code Sections 13–23–8–1(2) and 13–23–9–3.

However, our review of the record reveals that, regardless of whether Lessor paid the required statutory registration fees, or Lessee paid them in Lessor's stead, the UST's in question were registered at all times pertinent to this action. As a consequence, when Lessor—as the owner of the UST's—filed a first-party claim against the ELTF, such claim was honored and Lessor received reimbursement in the amount of $189,469.64. In so doing, however, the ELTF denied or disallowed some of Lessor's first-party claims,

in the aggregate amount of $13,209.14, because such claims were deemed non-reimbursable. Lessor did not seek administrative relief from the ELTF's decision to deny or disallow the "non-reimbursable" claims. Instead, Lessor sought reimbursement from Lessee for the disallowed remediation expenses, as well as lost rent, interest costs, out-of-pocket cleanup expenses—also known as the $35,000.00 deductible-and attorney fees. Indeed, Lessee eventually paid Lessor $200,986.41 as compensation for the remediation of the petroleum contamination.

Lessee then applied to the ELTF for third party indemnification in the amount of $230,986.41. Exhibit Four, which was attached to Lessee's application, sought third-party reimbursement for the Lessor's $35,000.00 deductible and numerous remediation expenses, all of which had already been denied or disallowed by the ELTF in Lessor's first-party claim. Accordingly, IDEM, on behalf of the ELTF, denied Lessee's third-party indemnification claim finding, in relevant part, that Lessor is not a third party. We agree.

Pursuant to Indiana Code Section 13–23–9–3, to receive money from the ELTF, Lessee must submit a request for indemnification of a third party. Here, the alleged third party, i.e., Lessor, was a first-party claimant pursuant to Indiana Code Section 13–23–9–2, involving the same parties, contamination, and remediation expenses. Lessor cannot simultaneously be a first-party claimant and an "outside party" to the underlying circumstances of the present dispute. Because Lessor was a first-party claimant, it is not a third party for purposes of Indiana Code Section 13–23–9–3 and, thus, we find no error in the trial court's judgment.[10]

Moreover, we note that, pursuant to the lease agreement, Lessee paid the annual registration fees for the UST's to the ELTF. During the leasehold period, Lessor did not pay any fees to the ELTF. Thus, for the three UST's that are the subject of this dispute, the ELTF received only one annual registration fee, per UST in question, from Lessee. As such, the ELTF should only be responsible for reimbursing either Lessor or Lessee—i.e., the

10. Lessee relies heavily upon the Financial Assistance Board's ("FAB") June 12, 2003 resolution, which provides:

BE IT HEREBY RESOLVED, to accomplish the [ELTF's] purpose of encouraging environmental cleanups and payment of first party and third party environmental liabilities arising from [UST's,] under Ind. Code § 13–23–8–1 and § 13–23–9–3 and any regulation or rule arising thereunder, "third party" and "third parties" are to be construed broadly to include any and all such third party claims against an owner or operator of an [UST,] including an owner or operator of a site with [UST's.]

Appellant's Br. Add. F. However, the trial court properly did not consider this resolution because it was not contained in the record of the OEA proceeding. A reviewing court may receive evidence needed to decide disputed issues in addition to that contained in the agency record only if it relates to the validity of the agency action at the time it was taken

and is needed to decide disputed issues regarding one or both of the following:

(1) Improper constitution as a decision-making body or grounds for disqualification of those taking the agency action.

(2) Unlawfulness of procedure or of decision-making process.

This subsection applies only if the additional evidence could not, by due diligence, have been discovered and raised in the administrative proceeding giving rise to a proceeding for judicial review. Ind.Code § 4–21.5–5–12. Neither of these conditions has been met in the present case.

Moreover, we note that this resolution does not alter our analysis in this case, where the owner was both a first-party claimant and an alleged third party, because we are free to determine any legal question that arises out of the administrative agency's decision and are not bound by its interpretation of the law. *Ind. Gas Co.*, 610 N.E.2d at 869.

owner *or* the operator—for the remediation costs of the petroleum contamination.

For the foregoing reasons, we affirm the trial court's judgment in favor of IDEM and the ELTF.

Affirmed.

SHARPNACK, J., and MAY, J., concur.