# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**KENT M. FRANDSEN**
Parr Richey Obremskey Frandsen
& Patterson, LLP
Lebanon, Indiana

**MICHAEL L. SCHULTZ**
**TRAVIS W. MONTGOMERY**
Parr Richey Obremskey Frandsen
& Patterson, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**ANDREW B. JANUTOLO**
**JON C. ABERNATHY**
Goodin Abernathy, LLP
Indianapolis, Indiana



FILED
Nov 16 2012, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

THE MARLING FAMILY TRUST,       )
    Appellant-Plaintiff,       )
                      )
         vs.       )       No. 49A02-1203-CT-186
                      )
ALLSTATE INSURANCE COMPANY,       )
    Appellee-Defendant.       )
                      )

## APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Timothy W. Oakes, Judge
Cause No. 49D13-0811-CT-53074

**November 16, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

The Marling Family Trust ("the Trust") appeals the trial court's grant of summary judgment in favor of Allstate Insurance Company. Upon review of the designated evidence, we conclude that the Trust acquired an equitable lien on insurance proceeds available under Thomas M. Pipes' Allstate insurance policy. We further conclude that the Trust protected its equitable interest in the policy proceeds by giving Allstate notice of its interest before it distributed any policy proceeds. For this reason, the trial court erred in granting summary judgment for Allstate. We reverse and remand.

## Facts and Procedural History

In January 2006, as security for a promissory note in favor of the Trust, Pipes granted the Trust a second mortgage on his home ("the property") on West Henry Street in Indianapolis. The mortgage agreement required Pipes to insure the property against loss or damage from fire, lightning, flood, and other common casualties, for the benefit of the Trust. Pipes obtained a "deluxe homeowners" insurance policy through Allstate. Appellant's App. p. 28. The policy period began May 20, 2007, and ended on May 20, 2008. In the event of a loss, the policy required the policyholder—or mortgagee, if the policyholder did not file a claim—to "promptly give [Allstate] or our agent notice." *Id.* at 61, 65. The policy also provided that any suit or action against Allstate must be brought "within one year after the inception of loss or damage." *Id.* at 65. Notably, Pipes failed to name the Trust as a mortgagee in the Allstate policy.

When Pipes lost the property in foreclosure, the Trust bought it in a Sheriff's sale on January 16, 2008. Shortly after the Trust took possession of the property, it

2

discovered significant interior water damage. On February 25, 2008, counsel for the Trust sent Allstate a letter notifying it that the Trust had purchased the property and discovered water damage. The letter also informed Allstate of the following: the Trust held a second mortgage on the property when the damage occurred, the Allstate policy was in effect when the damage occurred, the first mortgagee on the property, Washington Mutual, was named as an additional insured on the policy, and the Trust had reimbursed Washington Mutual for their interest in the property. As a result, the Trust asserted a claim under Pipes' policy for payment to cover the loss caused by the water damage. It was subsequently confirmed that the damage had occurred before the Sheriff's sale and that the Trust had not been aware of the damage when it purchased the property.

Three months later, an Allstate claims adjuster notified the Trust that the claim was being reviewed. The adjuster also noted that Allstate's policyholder was Pipes, with no additional insured listed on the policy. Allstate ultimately refused to distribute policy proceeds to the Trust.

The Trust brought suit against Allstate in November 2008. In November 2011, Allstate moved for summary judgment, contending, in relevant part, that the Trust had not acquired an equitable lien on the policy proceeds as it claimed. Allstate argued that this Court's rehearing opinion in *Lakeshore Bank & Trust Company v. United Farm Bureau Mutual Insurance Company, Inc.*—where this Court set forth the criteria for establishing an equitable lien in this context—was distinguishable from this case. 474 N.E.2d 1024, 1026 (Ind. Ct. App. 1985). The Trust, however, maintained that it was entitled to the policy proceeds under *Lakeshore*'s equitable-lien theory. After taking the

matter under advisement, the trial court granted Allstate's summary-judgment motion without issuing findings of fact or conclusions of law.[1]

The Trust now appeals.

## Discussion and Decision

On appeal, the Trust contends that the trial court erred in granting summary judgment in favor of Allstate. The Trust argues that the court failed to recognize that Pipes' duty to insure the property for the Trust's benefit gave rise to an equitable lien in the Trust's favor, thereby entitling it to insurance proceeds under Pipes' Allstate policy.[2]

"In reviewing an appeal of a motion for summary judgment ruling, we apply the same standard applicable to the trial court." *Presbytery of Ohio Valley, Inc. v. OPC, Inc.*, 973 N.E.2d 1099, 1110 (Ind. 2012), *reh'g denied*. We will affirm a grant of summary judgment where the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). "Review is limited to those facts designated to the trial court, T.R. 56(H), and [a]ll facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party." *Presbytery of Ohio Valley*, 973 N.E.2d at 1110 (quotation omitted). Questions regarding the interpretation of an insurance policy are especially appropriate for summary judgment, as they are primarily legal issues for the trial court. *Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 614 (Ind. Ct. App. 2011), *trans.*

---

[1] A trial court is not required to make such findings and conclusions when ruling on a motion for summary judgment. *Bernstein v. Glavin*, 725 N.E.2d 455, 458 (Ind. Ct. App. 2000), *trans. denied.* However, in the absence of such findings and conclusions, our review of the basis for the trial court's grant or denial of summary judgment is limited.

[2] Because we find the equitable-lien issue dispositive, we need not address the other arguments raised by the parties.

*denied.* Indeed, our review of the parties' arguments reveals that the disputed issues are issues of law. Where the dispute is one of law, not fact, our standard of review is de novo. *State Farm Fire and Cas. Co. v. C.F.*, 812 N.E.2d 181, 184 (Ind. Ct. App. 2004), *trans. denied.*

Specifically, the parties dispute the applicability of this Court's holding in *Lakeshore* based upon the facts of this case. In *Lakeshore*, Lakeshore Bank held a mortgage on a married couple's home. The mortgage agreement required the couple to maintain homeowner's insurance with a loss-payable clause in favor of Lakeshore. The couple did secure an insurance policy through Farm Bureau, but failed to name Lakeshore as a mortgagee. The couple ultimately defaulted on the mortgage, and Lakeshore initiated foreclosure proceedings. During foreclosure proceedings, a fire destroyed the home. Lakeshore obtained a default judgment against the couple and attached the insurance-policy proceeds. When Lakeshore attempted to collect the policy proceeds from Farm Bureau through proceedings supplemental, Farm Bureau informed Lakeshore that it had already distributed the proceeds to the couple. Lakeshore dismissed its claim against Farm Bureau with prejudice but later sued Farm Bureau a second time after learning that it had distributed the policy proceeds despite actual knowledge of Lakeshore's interest. Although the trial court granted Farm Bureau's summary-judgment motion on grounds of res judicata, and another panel of this Court affirmed, this Court later granted rehearing to address Lakeshore's equitable-lien claim. *Lakeshore*, 474 N.E.2d at 1026.

On rehearing, this Court explained that in this context, a mortgagee generally has no interest in an insurance policy on mortgaged property unless the mortgagee is given such interest by a covenant or condition in the policy or in the mortgage. *Id.* However,

> Where a positive duty is imposed upon the mortgagor to insure for the benefit of the mortgagee, the mere existence of the duty is sufficient to impress upon the proceeds of any policy taken out by the mortgagor an equitable lien in favor of the mortgagee. Once the insurer has notice of the mortgagee's rights it is considered to have a duty to treat the proceeds of the policy as though the provision that the proceeds should be payable to the mortgagee were written into the policy. The principle is that equity will treat as done that which should have been done. The mortgagee must protect his rights under the policy, however, by giving notice to the insurer.

*Id.* (citations omitted).

Here, the Trust's mortgage agreement with Pipes required Pipes to insure the property for the benefit of the Trust as mortgagee. As stated in *Lakeshore*, "*the mere existence of the duty* [to insure for the benefit of the mortgagee] *is sufficient* to impress upon the proceeds of any policy taken out by the mortgagor an equitable lien in favor of the mortgagee." *Id.* (emphasis added). Thus, under *Lakeshore*, the Trust acquired an equitable lien on the policy proceeds. Allstate, however, makes two arguments that this cannot be so.

First, Allstate argues that at the time it received notice of the Trust's mortgagee status and the loss, the property had been foreclosed upon and the Trust had purchased it; thus, the Trust was no longer mortgagee and cannot invoke the equitable-lien theory. This argument is not persuasive. "It is well established that the rights of the mortgagee to the insurance proceeds are determined as of the time of the loss. Therefore, a foreclosure action brought after the loss will not necessarily affect the insurer's liability to the

6

mortgagee." *Fifth Third Bank v. Ind. Ins. Co.*, 771 N.E.2d 1218, 1223-24 (Ind. Ct. App. 2002) (citing *Loving v. Ponderosa Sys., Inc.*, 444 N.E.2d 896, 906-07 (Ind. Ct. App. 1983), *vacated on other grounds*, 479 N.E.2d 531 (Ind. 1985)).[3] Thus, for purposes of our analysis, we consider the Trust's status at the time the loss occurred, when it was a mortgagee.

Second, Allstate attempts to confine *Lakeshore*'s holding to its facts, arguing that an equitable lien can only be held if an insurer has actual knowledge of the mortgagee's interest but nonetheless distributes the proceeds to an improper party. Appellee's Br. p. 9-10. Because Allstate did not distribute policy proceeds, it claims that there can be no equitable lien. *Id.* Allstate's argument that the equitable-lien theory may only be invoked if an insurer distributes policy proceeds fails to recognize the theory's broad, equitable nature—that is, "equity will treat as done that which should have been done." *Lakeshore*, 474 N.E.2d at 1026. Just as *Lakeshore* recognized the inequity that arose when an insurer distributed policy proceeds to an improper party after notice of the mortgagee's interest, we recognize the inequity that may arise when an insurer, with knowledge of a party's right to policy proceeds, refuses to distribute those proceeds.

Having concluded that the Trust acquired an equitable lien, we now consider whether the Trust protected its equitable interest by giving proper notice to Allstate. The Trust was required to give notice of its interest to Allstate before Allstate distributed the policy proceeds. This requirement of *Lakeshore* is necessary to protect insurers from the possibility of double payments—one payment to an improper party and another to a

---

[3] Although the cited authority did not consider unnamed mortgagees, we see no reason to differ in our treatment of the Trust based upon its unnamed status.

previously unknown mortgagee. Here, there is no danger that Allstate will have to dig into its pocket twice for the same claim. In February 2008, the Trust gave Allstate notice of its interest before Allstate distributed any policy proceeds; indeed Allstate has never paid anyone any amount on this claim. Allstate seemingly concedes that proper notice was given, stating "[A]n equitable lien can only be held if the insurer has notice of the mortgagee's rights *when the insurer distributes the policy proceeds*."[4] Appellee's Br. p. 9 (emphasis added).

Although *Lakeshore* speaks generally of notice, it clearly contemplates notice *before* policy proceeds are distributed: "Once the insurer has notice of the mortgagee's rights it is considered to have a duty to treat the proceeds of the policy as though the provision that the proceeds should be payable to the mortgagee were written into the policy." 474 N.E.2d at 1026. After notice is given, *Lakeshore* explains, an insurance company becomes "accountable to [the mortgagee] for the disposition of the proceeds." *Id.* at 1027. Thus, the insurer becomes "a stakeholder without authority to transfer the funds until the rights of the parties" are settled. *Id.* Here, the Trust, the only party making a claim under the policy, gave Allstate notice of its rights before any proceeds were distributed. When Allstate received this notice, it became accountable to the Trust for disposition of the policy proceeds. Upon a showing that the water damage to the property is covered by the policy, Allstate must transfer the policy proceeds to the Trust.[5]

---

[4] Although Allstate goes on to argue that no proceeds have been distributed in this case, unlike *Lakeshore*, we have already declined to confine *Lakeshore* to its facts.

[5] Allstate's summary-judgment motion makes reference to a possible coverage issue. *See* Appellant's App. p. 12 n.1 ("There is a question of fact as to whether Pipes had complied with his obligations under the policy regarding the proper care to winterize and protect the abandoned house. For

Based on the foregoing, we conclude that the trial court erred in granting summary judgment in favor of Allstate. The Trust's mortgage agreement with Pipes required Pipes to insure the property for the benefit of the Trust as mortgagee. Under *Lakeshore*, this is sufficient to give rise to an equitable lien in the Trust's favor. *Id.* at 1026. The Trust protected its equitable interest in the policy proceeds by informing Allstate of its mortgagee status before any policy proceeds were distributed. Thus, to the extent that the loss here is otherwise covered under the terms of Pipes' insurance policy, the Trust may recover policy proceeds. We reverse the judgment of the trial court and remand for a determination of whether the loss is covered under the policy.

Reversed and remanded.

MATHIAS, J., and BARNES, J., concur.

---

purposes of this motion only, Allstate does not assert the coverage exclusions found in the Policy at p. 7 pertaining to losses resulting from freezing pipes in an unoccupied home.").