

FILED

Mar 10 2017, 10:05 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Daniel H. Pfeifer
Jerome W. McKeever
James P. Barth
Pfeifer, Morgan & Stesiak
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Benjamin D. Ice
William A. Ramsey
Barrett McNagny, LLP
Fort Wayne, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| The Estate of Robert Curtis, Sr., by its Personal Representative, Theresa Brade, | March 10, 2017 |
| *Appellants-Defendants,* | Court of Appeals Case No. 71A05-1610-PL-2438 |
| v. | Appeal from the St. Joseph Circuit Court |
| GEICO General Insurance Company, | The Honorable David T. Ready, Judge |
| *Appellee-Plaintiff* | The Honorable Larry L. Ambler, Magistrate |
| | Trial Court Cause No. 71C01-1501-PL-16 |

**Baker, Judge.**

[1] Drake Matovich and Robert Curtis engaged in a physical altercation in a grocery store parking lot. Curtis was severely injured and eventually died, allegedly as a result of the altercation. Matovich and Curtis's estate entered into an agreed judgment, pursuant to which Matovich admitted liability and assigned his claims against his automobile insurer, GEICO General Insurance Company (GEICO), to Curtis. GEICO filed a declaratory judgment action against Curtis, seeking a declaration that the altercation was not covered under GEICO's insurance policy with Matovich because Matovich was not "using" the covered vehicle at the time of the incident. The trial court granted GEICO's summary judgment motion. On appeal, both parties make multiple arguments, but we find one dispositive—whether this altercation was covered by the policy as a matter of law. Finding that it was not, we affirm.

## Facts

[2] During the relevant period of time, Matovich was insured by GEICO under an automobile liability policy (the Policy) covering a 2004 Chevrolet truck. On September 17, 2009, Matovich was sitting in his parked truck in the parking lot of a Meijer in Mishawaka. Another vehicle, being driven by Curtis, bumped into Matovich's parked vehicle but did not stop.

[3] Matovich pursued Curtis's vehicle, pulling his truck alongside Curtis and asking him to roll down his window. Curtis stopped his vehicle and Matovich stopped his truck next to it. Curtis rolled down his window and Matovich said, "You just hit my truck. I need you to stop." Appellant's App. Vol. II p. 110.

Matovich then exited his truck and walked over to Curtis's window, saying, "You hit my truck. You can't just drive away. I'm going to need your information." *Id.* at 111.

[4] Curtis exited his vehicle and approached Matovich aggressively, saying, "f*ck you" repeatedly. *Id.* at 112. Curtis then chest bumped Matovich, who retreated to the rear of his truck, with Curtis following. Curtis made contact with Matovich again, and Matovich told Curtis to take it easy, stay back, and calm down. Curtis made contact with Matovich again. Matovich then put his hand out and said, "You need to stop and stay back." *Id.* at 115. Curtis made contact with Matovich, walking into his outstretched hand; Curtis's eyes rolled up, his arms went limp, and he collapsed. Curtis eventually died on June 21, 2010, and his Estate contends that his death stemmed from the altercation with Matovich.

[5] On May 20, 2011, Curtis's Estate filed a wrongful death suit against Matovich, alleging that Matovich's recklessness and negligence had resulted in Curtis's death. GEICO paid for Matovich's defense but reserved its rights to later deny coverage. Following mediation, the parties entered into an agreement. The Agreed Judgment, which was entered as an order by the trial court on July 31, 2014, provided, in pertinent part, as follows:

> 2. After the minor bump of the two vehicles, Mr. Matovich in connection with the use of his vehicle, exited his vehicle. In the process of exiting his vehicle, Mr. Matovich negligently came into contact with [Curtis]

causing [Curtis] to fall on the parking lot at the Meijer store.

\*\*\*

4. As a direct and proximate result of the negligence of [Matovich], [Curtis's Estate] has sustained medical expenses in the amount of $357,868.45 and [Curtis] incurred extensive pain and suffering until his ultimate death on June 21, 2010.

5. The parties agree and stipulate that the negligence of [Matovich] caused [Curtis's] injury.

\*\*\*

8. The parties agree and request the Court enter an Order for judgment against [Matovich] in the amount of $357,868.45.

9. In consideration of the mutual agreements contained herein, Matovich hereby assigns any and all claims which he may have against his own automobile insurance company as a result of the matters contained within this litigation.

*Id.* at 211-12. The trial court entered judgment in favor of Curtis, finding that Matovich owed damages to the Estate in the amount of $357,868.45 plus the costs of the action.

[6] Curtis filed a proceeding supplemental against GEICO, which filed a motion to stay the proceedings. That motion was granted, and GEICO then filed a

declaratory judgment action against Matovich and Curtis on January 9, 2015. GEICO alleged that it had defended Matovich under a reservation of rights and that it had determined that it had no obligation to pay the judgment, as the incident was not covered by the Policy. GEICO eventually filed a motion for summary judgment. Following briefing and a hearing, the trial court granted summary judgment in favor of GEICO. In pertinent part, the trial court found that

> [t]he undisputed facts in this case show that coverage does not exist because the injuries to the Deceased did not arise out of Matovich's ownership, maintenance or use of the insured motor vehicle within the meaning of the coverage clause of the policy.
>
> ***
>
> . . . Matovich and the Deceased had already exited from their motor vehicles when Matovich's physical contact of the Deceased caused the latter's injuries. Even prior to Matovich making physical contact, the Deceased "chest bumped" Matovich three (3) times. Matovich's actions did not arise out of the use or ownership or maintenance of the insured motor vehicle within the meaning of the Policy's coverage term. The injury occurred at a time and a distance away from the physical contact of the vehicles and after both Matovich and the Decease[d] exited their respective vehicles, and after a heated "conversation" between them. Matovich's physical contact was not [causally] connected to the use of his motor vehicle and can not be construed to be within the contemplation of [Curtis] and Malovich [sic] to be covered under the Policy.

*Id.* at 12-13. Curtis now appeals.

# Discussion and Decision

## I. Standard of Review

Our standard of review on summary judgment is well established:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp,* 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

This Court has noted that where, as here, a primary issue is a question regarding the interpretation of an insurance policy, the case is especially appropriate for summary judgment because it turns solely on a matter of law. *Marling Family Trust v. Allstate Ins. Co.*, 981 N.E.2d 85, 88 (Ind. Ct. App. 2012). Our Supreme Court has described the appellate review of insurance policies as follows:

> Insurance policies are contracts that are subject to the same rules of construction as are other contracts. When the language of an insurance contract is clear and unambiguous, we will assign to the language its plain and ordinary meaning. An insurance policy that is unambiguous must be enforced according to its

terms, even those terms that limit an insurer's liability. Thus, we may not extend insurance coverage beyond that provided by the unambiguous language in the contract. Also, insurers have the right to limit their coverage of risks and, therefore, their liability by imposing exceptions, conditions, and exclusions.

*Sheehan Constr. Co. v. Cont'l Cas. Co.*, 935 N.E.2d 160, 169 (Ind. 2010) (internal citations omitted), *opinion adhered to as modified on reh'g*, 938 N.E.2d 685 (Ind. 2010).

## II. Coverage

[9] Although the parties each raise multiple arguments, we find one issue to be dispositive—whether Matovich's actions were covered under the Policy as a matter of law. The Policy's liability provision states that GEICO agreed to pay damages for which Matovich became legally obligated to pay because of bodily injury "arising out of the ownership, maintenance, or use of the owned auto . . . ." Appellant's App. Vol. II p. 172. The primary issue in the case before us is whether the altercation between Matovich and Curtis arose out of the "use" of Matovich's vehicle.

[10] Our Supreme Court has interpreted the phrase "ownership, maintenance, and use" of a vehicle, in the context of an insurance policy, to mean "being caused by use of" the vehicle. *Ind. Lumbermens Mut. Ins. Co. v. Statesmen Ins. Co.*, 260 Ind. 32, 34, 291 N.E.2d 897, 899 (1973). Therefore, an accident arises out of the ownership, maintenance, and use of a vehicle only if such ownership, use, or maintenance is the incident's "efficient and predominating cause." *Id.*

Indiana has intentionally adopted a narrower construction of the phrase than that used by courts in other jurisdictions. *Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503, 506 (Ind. Ct. App. 1993).

[11] Coverage under an "ownership, maintenance, or use" clause "'does not extend to results distinctly remote, though within the line of causation.'" *Moons v. Keith*, 758 N.E.2d 960, 964 (Ind. Ct. App. 2001) (quoting 6B Insurance Law & Practice § 4317 (Buckley ed. 1979)). In other words, if a vehicle's use is only tangentially related to an incident, coverage does not exist under such a clause. *Id.*; *see also Sizemore v. Erie Ins. Exch.*, 789 N.E.2d 1037, 1040 (Ind. Ct. App. 2003) (finding no coverage where the vehicle merely transported tortfeasor to the scene of an incident); *Barron*, 615 N.E.2d at 506 (finding no coverage where, "[a]t most, the truck was little more than a platform that was only incidentally related to the accident"); *State Farm Mut. Ins. Co. v. Spotten*, 610 N.E.2d 299, 302 (Ind. Ct. App. 1993) (finding that a passenger's random act of violence did not qualify for coverage); *Miller v. Loman*, 518 N.E.2d 486, 492-93 (Ind. Ct. App. 1987) (finding connection between passenger kicking a truck's muffler out of the road and the "use" or "maintenance" of the truck was "too unsubstantial" and "simply too farfetched" to qualify for coverage).

[12] Curtis directs our attention to *Argonaut Insurance Company v. Jones*, 953 N.E.2d 608 (Ind. Ct. App. 2011), in support of his argument that summary judgment was improper. In *Argonaut*, Monroe County Sheriff's Deputy Sarah Jones was called to the scene of a traffic accident. Following procedure, she placed her vehicle in the southwest-bound lane of the road, left the engine running, and

activated her police vehicle's emergency lights. Deputy Jones then began to direct traffic using hand signals and a flashlight. After about fifteen minutes, Deputy Jones was struck by a vehicle and later died as a result of her injuries. *Id.* at 611-12. Her husband and her estate sued a number of entities, including Argonaut Insurance Company, which insured Monroe County.

[13] The policy at issue in *Argonaut* contained a nearly identical version of the liability provision at issue in the case at hand, providing coverage for bodily injury resulting from the ownership, maintenance, or use of a covered vehicle. *Id.* at 617. The trial court found that the deputy was "using" her vehicle at the time of the accident, granting summary judgment in favor of the plaintiffs on that issue. *Id.* Argonaut appealed. After exploring a line of relevant cases, the *Argonaut* Court synthesized the caselaw by holding that "whether there is an 'active' relationship between the claimant and the vehicle and the reasonable expectations of the parties upon entering into the insurance agreement are the crucial questions to answer in determining coverage issues." *Id.* at 619 (internal citation omitted).

[14] Emphasizing evidence that Deputy Jones's vehicle and its specialized equipment were "vital" and "integral" to the scene and to her role in traffic control, this Court found that Deputy Jones had an "active relationship to the vehicle at the time of the collision." *Id.* We noted that neither distance from the vehicle nor time spent away from the vehicle are critical; instead, what mattered was whether Deputy Jones was in an active relationship with her vehicle at the time of the accident. The Court found that because she had an

active relationship to the vehicle and because the vehicle was central to her role in controlling traffic at the scene, the vehicle was in "use" at the time of the accident. *Id.* at 620. We also observed that the deputy's relationship to her patrol car at the time of the accident "was clearly within the contemplation of the parties to the policy" and that "the reasonable scope of covered uses of Deputy Jones's patrol car necessarily includes its deployment and use in traffic control situations like the one at issue." *Id.* Therefore, we affirmed summary judgment on the issue of coverage.

[15] We find *Argonaut* distinguishable from the case at hand. Most importantly, the police vehicle in *Argonaut* had an integral role to the scene and to Deputy Jones's role directing traffic. It was being used to block a lane of traffic as she directed vehicles around it. In other words, she unquestionably had an active relationship with that vehicle at the time of the accident. Here, in contrast, when Matovich exited his vehicle to confront Curtis, engaging in a protracted and physical confrontation with the other man, he no longer had an active relationship with his vehicle. His vehicle no longer played a role in the incident; instead, it was merely an altercation between the two men. Furthermore, we cannot conclude that the reasonable expectations of the parties at the time they entered into the Policy would have included coverage for a physical altercation that merely happened to occur near the covered vehicle. As a result, we find that the trial court properly granted summary judgment in favor of GEICO based on a conclusion that, as a matter of law,

Matovich was not "using" his vehicle at the time of the altercation with Curtis. Because no coverage exists under the Policy, Curtis is not entitled to relief.

[16]     The judgment of the trial court is affirmed.


Mathias, J., and Pyle, J., concur.