

FILED

Apr 28 2026, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Starr Indemnity & Liability Insurance Company, Underwriters of Lloyd's of London Syndicate 1861, Liberty International Underwriters, StarNet Insurance Company, and XL Specialty Insurance Company,

*Appellants-Defendants,*

v.

American Commercial Barge Line, LLC,

*Appellee-Plaintiff.*

April 28, 2026

Court of Appeals Case No.
25A-PL-1073

Appeal from the
Marion Superior Court

The Honorable
Christina R. Klineman, Judge

**Opinion by Senior Judge Najam**
Judges Kenworthy and Scheele concur.

**Najam, Senior Judge.**

## Statement of the Case

[1] In this declaratory judgment action, the question presented is whether there is general commercial liability coverage for environmental contamination at a Louisiana shipyard that has been designated as an Environmental Protection Agency (EPA) Superfund site. Appellee American Commercial Barge Line (ACBL) is an Indiana company that provides barge transportation services, and Appellants Underwriters of Lloyd's of London Syndicate 1861, Liberty International Underwriters, StarNet Insurance Company, Starr Indemnity & Liability Insurance Company, and XL Specialty Insurance Company (collectively "Starr Insurers") are insurers that issued excess liability policies to ACBL.

[2] Starr Insurers bring this interlocutory appeal from the trial court's grant of ACBL's motion for partial summary judgment on choice of law and its denial of Starr Insurers' cross-motion for summary judgment on coverage under the excess policies. We affirm the trial court's grant of ACBL's motion for partial summary judgment on choice of law, namely, that Indiana law applies.

However, we reverse the trial court's denial of Starr Insurers' cross-motion for summary judgment and hold that Starr Insurers are entitled to summary judgment on the coverage issue under Indiana law. Thus, we affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

From 1965 to 1993, an entity known as SBA operated a barge cleaning facility at a shipyard in Jennings, Louisiana. During that time, barges owned by National Marine, ACBL's predecessor, were delivered to the site to be cleaned. Following investigation of the site, the EPA entered into an agreement in December 2002 with SBA and a group of former customers of SBA's barge cleaning operations, including ACBL.[1]

Later, in 2015, the EPA notified ACBL of its ongoing investigation of the release and/or threatened release of hazardous substances, pollutants, or contaminants at the shipyard. The EPA identified ACBL as a potentially responsible party (PRP) under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA)[2] with respect to environmental liability at the shipyard site because the barges owned by ACBL's predecessor, National Marine, were among those delivered to the site. And in 2016, ACBL

---

[1] National Marine merged with ACBL in 1998. Appellants' App. Vol. 14, p. 7.

[2] *See* 42 U.S.C. §§ 9601-9675.

entered into an agreement with the EPA and other PRPs. This litigation over ACBL's insurance coverage is derived from that agreement.

[5] ACBL filed this declaratory judgment action in November 2020 against Starr Insurers seeking coverage under four umbrella policies for alleged EPA claims of contamination at the SBA shipyard. The policies include three insuring agreements with a single policy limit and single policy premium for maritime and non-maritime risks. Two of the insuring agreements provide traditional maritime coverage, but ACBL seeks coverage only under Insuring Agreement C, which provides umbrella general commercial liability coverage for personal injury and property damage. In January 2021, Starr Insurers filed a counterclaim for declaratory judgment in which it sought a declaration that the policies are governed by the law of the State of New York. It was not until February 2024 that Starr Insurers first suggested that federal admiralty law applies to the policies.

[6] ACBL moved for partial summary judgment on choice of law, contending that the policies are governed by Indiana law. Starr Insurers responded that the policies are maritime contracts and that federal admiralty law applies. They also filed a cross-motion for summary judgment, arguing that a certain provision of Insuring Agreement C bars coverage for ACBL's claims. The provision at issue in this appeal, referred to as the "watercraft limitation provision," excludes from coverage any property damage "liability arising out of the ownership . . . [or] maintenance . . . of any watercraft." Appellants' App. Vol. 11, pp. 45, 122. The trial court granted ACBL's motion for partial

summary judgment on choice of law, finding that the excess policies are not maritime contracts, federal admiralty law does not apply, and Indiana law does apply to the policies. The court further denied Starr Insurers' cross-motion, finding in part that ACBL's claims are not excluded by the watercraft limitation provision of the excess policies. Starr Insurers now appeal.[3]

## Issues

Starr Insurers raise two issues, which we restate as:

I.    Whether Indiana law or federal admiralty law applies to ACBL's excess insurance policies; and

II.    Whether, under the applicable choice of law, the watercraft limitation provision of the insurance policies bars coverage for ACBL's liability for environmental contamination at the shipyard.

## Discussion and Decision

We review summary judgment decisions de novo, applying the same standard as the trial court. *Wiley v. United Farm Fam. Mut. Ins. Co.*, 239 N.E.3d 89, 91 (Ind. Ct. App. 2024), *trans. denied*. Summary judgment is appropriate if the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). "[T]he fact that the parties have filed cross-motions for summary judgment neither alters our standard of review nor changes our analysis—we consider each motion separately to determine whether the moving party is

---

[3] We held oral argument in this case on February 11, 2026.

entitled to judgment as a matter of law." *Dishman v. Henry Cnty. Redevelopment Comm'n*, 265 N.E.3d 1023, 1026 (Ind. Ct. App. 2025). "Matters involving disputed insurance policy terms present legal questions and are particularly apt for summary judgment." *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Est. of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018).

## I. Choice of Law

On appeal, just as before the trial court, ACBL maintains that a choice of law determination is necessary because the excess policies under which it is seeking coverage do not contain a choice of law provision. To that end, ACBL contends that in this dispute there are no maritime interests implicated, the dispute is inherently local, and it concerns coverage for an on-shore environmental contaminant release. ACBL further argues that Indiana is the principal location of the insured risk and that, considering the predominant choice of law factors, Indiana law applies. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 815-16 (Ind. 2010) (stating that uniform contract interpretation approach applied to determine choice of law in insurance contract cases requires court to first attempt to determine principal location of insured risk).

Starr Insurers counter that Indiana law is not controlling because the policies are maritime contracts whose subject matter is maritime commerce and that the policies are therefore governed by federal admiralty law. In a brief overview, Starr Insurers describe in general terms the process by which admiralty courts

assess "whether there is an applicable established federal rule, or a policy reason for establishing a new and uniform federal rule." Appellants' Reply Br. p. 39. And Starr Insurers assert broadly that "there are established rules of federal law governing the issues at hand," including "general canons of construction" and "[f]ederal maritime principles of contract interpretation," and that "established federal maritime standards" preclude ACBL's interpretation of the watercraft limitation provision. *Id.* at 41, 42.

[10] In *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004), the leading case on admiralty jurisdiction, the Supreme Court instructs that in determining whether a contract is a maritime contract, the court should focus its inquiry "on whether the principal objective of a contract is maritime commerce" and that the "touchstone is a concern for the uniform meaning of maritime contracts." *Id.* at 25, 28. While *Kirby* is a bill of lading case and does not address whether an umbrella insurance policy is a maritime contract, there are numerous federal maritime insurance cases that have been guided by *Kirby*'s analysis and precepts.

[11] Although Starr Insurers urge that, pursuant to *Kirby*, these excess policies are maritime contracts, they acknowledged at oral argument that the Supreme Court's opinion in *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310 (1955) "means that if there is no established rule of federal law, then state law applies." https://mycourts.in.gov/arguments/default.aspx?&id=3073 [https://perma.cc/7SMD-X73Y] (beginning at 13:01). The Court asked counsel for Starr Insurers: "What is the established rule of federal law then that

we [would be] flouting or thwarting by not treating this as a maritime contract?" And counsel replied: "The issue of whether it's a maritime contract is separate from whether there's an established rule of federal law. If . . . it's a maritime contract, then federal law applies if there's an established rule. If it's not a maritime contract, it doesn't. But whether it's a maritime contract or not isn't governed by established rules of federal law. That's a separate question." *Id.* (beginning at 13:06). For its part, ACBL argues that "[e]ven when an insurance policy is a marine contract, state law still applies where no federal statute or judicially established federal admiralty rule applies." Appellee's Br. p. 24.

[12] The response of counsel was correct, but it did not answer the Court's question. Starr Insurers challenge the trial court's ruling that federal admiralty law does not apply. However, it has not shown this Court what established rule of federal law would be frustrated if we were to affirm the trial court and hold that the ACBL excess policies are not maritime contracts and not governed by federal maritime law.

[13] In *Great Lakes Insurance SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65 (2024), the Supreme Court recently narrowed the holding in *Wilburn Boat* to its facts but nevertheless reiterated that under *Wilburn Boat* "state law applie[s] as a gap-filler in the absence of a uniform federal maritime rule." *Raiders Retreat*, 601 U.S. at 74. Accordingly, even if Starr Insurers were to establish, and we were to hold, that the excess policies are maritime contracts, the second, separate, and essential question would remain unanswered—whether, and if so to what

extent, federal admiralty law applies as well as whether the application of Indiana law would interfere with the uniformity of maritime law.

[14] On this second question, Starr Insurers maintain inconsistent positions in this appeal. In their initial brief, Starr Insurers assert that the policies are maritime contracts governed by federal law even though Insuring Agreement C provides non-maritime general commercial liability coverage. Appellants' Br. pp. 34, 42. And they request that we vacate the trial court's grant of summary judgment for ACBL, including its determinations that the excess policies are not maritime contracts and that Indiana law applies, and that we "declare that federal maritime law governs the policies at issue." *Id.* at 49-50.

[15] Nevertheless, Starr Insurers conclude their opening brief by stating, "In light of the trial court's erroneous finding that the policies are not governed by federal maritime law, the court did not decide whether the watercraft limitation provision . . . applies under federal law to preclude Insuring Agreement C coverage for ACBL's pollution liability[]" and that "upon holding [i.e., assuming] that federal maritime law governs . . . this Court should remand for the trial court to decide those issues in the first instance." *Id.* at 49.

[16] Likewise, in their reply brief, Starr Insurers assert that on appeal "there is no [trial court] ruling to review" on the federal law issue and that "[t]he question at this stage is . . . *whether* there is federal law governing the substantive legal issues at hand." Appellants' Reply Br. pp. 37, 40. Starr Insurers then conclude that these and other arguments that federal law controls "are all arguments for

another day—on remand." *Id.* at 44. Moreover, despite their claim that the policies are governed by admiralty law, Starr Insurers declined to brief the issue and have not shown in this appeal that a judicially established federal rule supplants Indiana law. And as we have noted, at oral argument Starr Insurers demurred when asked to identify the established rule of federal law that we would be thwarting by not treating Insuring Agreement C as a maritime contract.

[17] Thus, Starr Insurers appeal from the trial court's judgment that the policies are not maritime contracts and not governed by federal maritime law but have nonetheless intentionally not conducted the two-stage analysis required both to determine whether the excess policies are maritime contracts and, if so, to what extent federal admiralty law applies. This case has been pending for over five years. We decline Starr Insurers' invitation to remand this issue, which it briefed to the trial court and which the trial court has already considered and decided. Having appealed the trial court's choice of law determination, it was incumbent upon Starr Insurers to brief the issue to this Court, including both the substantive law and rules of federal contract construction and their ramifications. "We will not address arguments which are not developed and will not develop arguments for a party to an appeal." *Z.C. v. Rev. Bd. of Indiana Dep't of Workforce Dev.*, 213 N.E.3d 1101, 1109 (Ind. Ct. App. 2023).

[18] An appellant's brief must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. *Thacker v. Wentzel*, 797 N.E.2d 342, 345 (Ind. Ct. App. 2003) (quoting Ind. Appellate Rule 46(A)(8)(a)). In this

appeal, Starr Insurers have not shown whether this case is "inherently local," whether it is subject to uniform, established rules of admiralty jurisdiction, and whether applying Indiana law would undermine the uniformity of general maritime law. *See Kirby*, 543 U.S. at 27-29. As such, Starr Insurers have failed to make a cogent argument supported by authorities as required by Appellate Rule 46(A)(8)(a) and have, therefore, waived the argument. *See Martin v. Brown*, 129 N.E.3d 283, 285 (Ind. Ct. App. 2019) (stating that failure to present cogent argument results in waiver of issue on appeal).

[19] However, Starr Insurers assert in the alternative that the watercraft limitation provision under Insuring Agreement C unambiguously excludes coverage for ACBL's pollution liability and that, even under Indiana law, they are entitled to judgment on their cross-motion for summary judgment. Since both parties have briefed and argued that issue, to resolve this appeal we need not decide whether the principal objective of the excess policies is maritime commerce as instructed by *Kirby*, 543 U.S. at 25, whether the policies are maritime contracts, or whether admiralty law applies. Just as in *Kirby*, we are presented with "a simple question of contract interpretation," and we will decide this appeal on that basis under Indiana law. *Id.* at 30.

## II. Watercraft Limitation Provision

[20] The watercraft limitation provision excludes from coverage any property damage "*liability arising out of* the ownership . . . [or] maintenance . . . of any watercraft." Appellants' App. Vol. 11, pp. 45, 122 (emphasis added). The

resolution of whether this provision bars coverage for ACBL's liability for environmental contamination at the shipyard hinges on the meaning of the phrase "liability arising out of." We note that all four words of the phrase must be considered when answering that question. *See Magee v. Garry-Magee*, 833 N.E.2d 1083, 1088 (Ind. Ct. App. 2005) (stating that court must give meaning to all words in contract).

[21] Interpretation of the language of an insurance policy is a question of law that we review de novo. *G&G Oil Co. of Ind. v. Cont'l W. Ins. Co.*, 165 N.E.3d 82, 86 (Ind. 2021). And because insurance policies are contracts like any other contract, *Justice v. Am. Fam. Mut. Ins. Co.*, 4 N.E.3d 1171, 1176 (Ind. 2014), we interpret them according to the same rules of construction as other contracts. *Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 615 (Ind. Ct. App. 2011), *trans. denied*. When confronted with a dispute over the meaning of insurance policy terms, we assign clear and unambiguous policy language its plain, ordinary meaning and construe only those terms that are ambiguous. *Erie Indem. Co.*, 99 N.E.3d at 630.

[22] Our first task, then, is to determine whether the watercraft limitation provision is ambiguous. We are mindful that policy terms are not necessarily ambiguous, and thus subject to judicial construction, merely because they are not defined in the policy or because the parties differ as to their meaning. *Ind. Farmers Mut. Ins. Co. v. HomeWorks Mgmt. Corp.*, 201 N.E.3d 666, 671-72 (Ind. Ct. App. 2022), *trans. denied*. Rather, terms are ambiguous only if they are "'susceptible

to more than one **reasonable** interpretation.'" *G&G Oil Co.*, 165 N.E.3d at 87 (quoting *Erie Indem. Co.*, 99 N.E.3d at 630).

[23] When evaluating an alleged ambiguity, we view the insurance policy from the perspective of an ordinary policyholder of average intelligence. *Id.* If reasonably intelligent policyholders would honestly disagree on the meaning of the policy's language, then we will find the term ambiguous and thus subject to judicial construction. *Erie Indem. Co.*, 99 N.E.3d at 630. Conversely, if reasonably intelligent policyholders could not legitimately disagree as to the meaning of the policy language, we deem the term unambiguous and apply its plain, ordinary meaning. *Id.*

[24] Not surprisingly, the parties here present two differing interpretations for the phrase "liability arising out of" in the policies. Starr Insurers insist that the term is unambiguous and that it means a "legal responsibility that originates or stems from" an occurrence. Citing another ACBL case, Starr Insurers contend that under federal admiralty law, when construing maritime contracts, the phrase "arising out of" is broadly construed. *See* Appellants' Br. p. 28 (citing *Am. Com. Barge Line LLC v. Louis Dreyfus Co. LLC*, No. 4:19-CV-00274-SEB-DML, at *5 (S.D. Ind. Sept. 3, 2020) (mem.)). Accordingly, Starr Insurers contend that the phrase denotes a broad causal nexus that includes ACBL's CERCLA liability for environmental contamination that stems from its predecessor's ownership and maintenance of the barges, which contained hazardous waste material and were sent to the SBA shipyard for cleaning.

ACBL reasons that, under *Indiana Lumbermens Mutual Insurance Co. v. Statesman Insurance Co.*, 291 N.E.2d 897 (Ind. 1973) and its progeny,[4] the phrase "arising out of" is synonymous with "being caused by" such that the conduct in question is the "efficient and predominating cause" of the occurrence. *Id.* at 899. Applying this negligence liability analysis, ACBL maintains that the damage at the shipyard did not arise from the cleaning of the barges but rather from SBA's subsequent improper storage, handling, and treatment of hazardous waste, which led to the contamination. ACBL thus concludes that the watercraft limitation provision does not bar coverage under the policies because neither the ownership nor maintenance of the barges at the shipyard was the "efficient and predominating cause" of the environmental damage.

The trial court determined:

> *At issue here is simply this: whether ACBL's liabilities at the Shipyard arose from the use or maintenance of a watercraft through ACBL's provision of barges to the Shipyard to be cleaned.* From the designated evidence provided to the Court, which is not in dispute, it is clear that the damage at the Shipyard arose from SBA's improper storage, handling, and treatment of hazardous waste, which led to contamination. It has not been explained, nor can the Court

---

[4] *Lumbermens'* progeny is abundant. *See, e.g., Glob. Caravan Techs., Inc. v. Cincinnati Ins. Co.*, 135 N.E.3d 584 (Ind. Ct. App. 2019), *trans. denied*; *Est. of Curtis by Brade v. GEICO Gen. Ins. Co.*, 71 N.E.3d 1157 (Ind. Ct. App. 2017); *Keckler v. Meridian Sec. Ins. Co.*, 967 N.E.2d 18 (Ind. Ct. App. 2012), *trans denied*; *Sizemore v. Erie Ins. Exch.*, 789 N.E.2d 1037 (Ind. Ct. App. 2003); *Meridian Mut. Ins. Co. v. Purkey*, 769 N.E.2d 1179 (Ind. Ct. App. 2002); *Moons v. Keith*, 758 N.E.2d 960 (Ind. Ct. App. 2001), *trans. denied*; *Franz v. State Farm Fire & Cas. Co.*, 754 N.E.2d 978 (Ind. Ct. App. 2001), *trans. denied*; *Barga v. Ind. Farmers Mut. Ins. Grp., Inc.*, 687 N.E.2d 575 (Ind. Ct. App. 1997), *trans. denied*; *Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503 (Ind. Ct. App. 1993), *trans. denied*; *State Farm Mut. Auto. Ins. Co. v. Spotten*, 610 N.E.2d 299 (Ind. Ct. App. 1993), *trans. denied*; *Sharp v. Ind. Union Mut. Ins. Co.*, 526 N.E.2d 237 (Ind. Ct. App. 1988), *trans. denied*.

> speculate, as to why ACBL and its predecessor agreed to assume and face liability for the damage at the Shipyard. The Court makes no finding or determination regarding the liability of ACBL at the Shipyard but instead only determines whether the Excess Policies apply to such liability. The Court finds that they do, and specifically that ACBL's claims are not barred by the Watercraft Limitation. ACBL's liability does not arise out of the maintenance of a watercraft, but instead arises from SBA's improper storage, handling, and treatment of hazardous waste. Further, *applying Indiana's longstanding "efficient and predominating cause" test, the Court finds that SBA's negligence with the hazardous waste—not the cleaning of ACBL's barges—is the efficient and predominating cause of the contamination at the Shipyard, which caused the damage at issue.*

Appellants' App. Vol. 2, p. 60 (emphasis added). The trial court correctly defined the issue as whether ACBL's liability arose from its provision of watercraft to the shipyard to be cleaned. However, the court's subsequent analysis and decision did not focus upon the delivery of the barges to the shipyard. Instead, the court focused upon whether ACBL's liability at the shipyard was caused by SBA's barge cleaning operation or its storage, handling, and treatment of the hazardous waste.

[27] To define the phrase "arising out of," the trial court agreed with ACBL and applied the "efficient and predominating cause" negligence analysis from *Lumbermens*. Under this analysis, the court found that the connection between the cleaning of the barges and the environmental contamination was too attenuated to establish that the barge cleaning operation caused the contamination and environmental damage at the shipyard. And while the court

acknowledged the CERCLA strict liability claim against ACBL, it nonetheless rejected Starr Insurers' contention that regardless of how "arising out of" is defined, ACBL's coverage claims are barred because ACBL's liability is defined by CERCLA. The court thus concluded that ACBL's claims are not barred by the watercraft limitation provision because ACBL's liability did not "arise out of" the ownership or maintenance of a watercraft (i.e., the cleaning of the barges).

[28] Although the coverage claim is based on ACBL's strict liability, ACBL contends that principles of common law negligence control whether there is coverage. Appellee's Br. pp. 20, 35. ACBL asserts that, absent a provision to the contrary, "liability insurance policies do not differentiate between legal theories of liability." *Id.* at 35. We agree with that rule, but the rule does not speak to coverage and simply means that the law of contract rather than the theory of liability controls the interpretation of an insurance policy. *See, e.g.*, *Stockberger v. Meridian Mut. Ins. Co.*, 395 N.E.2d 1272, 1277 (Ind. Ct. App. 1979) ("An insurance policy is a contract between two parties; therefore, the law of contract rather than the law of negligence is controlling."). Moreover, the rule does not mean that when interpreting an insurance contract, the theory of liability is irrelevant and cannot be considered when assessing a coverage claim. Rather, the language of a policy is construed in the context of the claim, including the theory of liability and the underlying facts.

[29] In this case the theory of liability is strict liability under CERCLA. *See* 42 U.S.C. § 9607. Within the CERCLA statutory framework, liability for

environmental contamination attaches if the defendant is a "responsible party" under one of the four categories of potentially responsible parties listed in the Act. *See* 42 U.S.C. § 9607(a)(1)-(4). The EPA determined that ACBL became a PRP subject to strict liability under CERCLA when ACBL's predecessor, National Marine, "arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment[,] of hazardous substances" at the shipyard. Appellants' App. Confid. Vol. 2, p. 163 (EPA's Administrative Settlement Agreement and Order ¶ 26 (Ex. B to Ex. 1 of ACBL's Motion for Partial Summary Judgment)); *see also* 42 U.S.C. § 9607(a)(3) (stating that any person who arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances shall be liable for costs of removal or remedial action, any other necessary costs of response, damages, and costs of health assessments). Simply stated, ACBL is a PRP under CERCLA as an "arranger" or "generator" because its predecessor arranged for barges that it owned and that contained hazardous substances to be delivered to the shipyard for cleaning, an occurrence which triggered ACBL's strict liability for response costs for environmental contamination at the shipyard.[5]

[30] Our Supreme Court recently explained that strict liability "'assumes no negligence of the actor[] but chooses to impose liability anyway.'" *Cave*

---

[5] EPA-mandated clean-up and response costs are damages in a commercial general liability policy. *Hartford Accident & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 298 (Ind. Ct. App. 1997), *trans. denied.*

*Quarries, Inc. v. Warex LLC*, 240 N.E.3d 681, 686 (Ind. 2024) (quoting *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 276 (Ind. 2003)). And this Court has acknowledged that liability under CERCLA is strict and that no showing of negligence is required. *Kiel Bros. Oil Co. v. Ind. Dep't of Env't Mgmt.*, 819 N.E.2d 892, 900 (Ind. Ct. App. 2004) (quoting *Western Ohio Pizza, Inc. v. Clark Oil & Refining Corp.*, 704 N.E.2d 1086, 1090 (Ind. Ct. App. 1999), *trans. denied*), *trans. denied*.

[31] Numerous federal circuit courts have addressed the issue of causation under CERCLA. In *Harley-Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 343 (7th Cir. 1994), Judge Posner stated succinctly that "[p]roof of CERCLA liability does not require proof even of negligence . . . CERCLA liability is strict." Stated more fully, the Seventh Circuit has explained that, under CERCLA, "[l]iability is imposed when a party is found to have a statutorily defined 'connection' with the facility; that connection makes the party responsible *regardless of causation*." *U.S. v. Cap. Tax Corp.*, 545 F.3d 525, 530 (7th Cir. 2008) (emphasis added).

[32] In *United States v. Monsanto Co.*, 858 F.2d 160 (4th Cir. 1988), the Fourth Circuit rejected the generator defendants' contention that the district court had erred when it failed to read into CERCLA section 9607(a)(3) a requirement that the government prove a nexus between the waste they sent to the site and the resulting environmental harm. *Id.* at 169. The *Monsanto* court also rejected the generator defendants' argument that CERCLA requires proof of ownership of the waste at any time later than the time of disposal. *Id.*

In *United States v. Alcan Aluminum Corp.*, 964 F.2d 252 (3d Cir. 1992), the Third Circuit rejected Alcan's contention that under CERCLA the government was required to prove that Alcan's mineral oil emulsion containing hazardous substances deposited at a hazardous waste site had "caused or contributed to the release or the Government's incurrence of response costs." *Id.* at 264. The court also addressed the plain meaning of the CERCLA statute, concluding that:

> The statute does not, on its face, require the plaintiff to prove that the generator's *hazardous substances* themselves caused the release or caused the incurrence of response costs; rather, it requires the plaintiff to prove that the *release or threatened release* caused the incurrence of response costs, and that the defendant is a generator of hazardous substances at the facility.

*Id.* The court then observed that the legislative history supports the position "that CERCLA does not require the plaintiff to establish a specific causal relationship between a generator's waste and the release or the plaintiff's incurrence of response costs." *Id.* The court described that history as follows:

> It appears that the early House of Representatives' version of CERCLA imposed liability upon those persons who "caused or contributed to the release or threatened release." However, the version ultimately passed by Congress deleted the causation requirement and instead imposed liability upon a class of responsible persons without regard to whether the person specifically caused or contributed to the release and the resultant response costs. . . .

> *In sum, the legislative history indicates that Congress considered and rejected a requirement that the plaintiff establish that the defendant's waste caused or contributed to the release or the incurrence of response costs.*

*Id.* at 264-65 (emphasis added).

[34]     In another *Alcan* case, the Second Circuit addressed causation under CERCLA and described the imposition of CERCLA liability on a generator under Section 9607(a), stating:

> The plain meaning of this language dictates that the government need only prove: (1) there was a release or threatened release, which (2) caused incurrence of response costs, and (3) that the defendant generated hazardous waste at the clean-up site. What is *not* required is that the government show that a specific defendant's waste caused incurrence of clean-up costs.

*U.S. v. Alcan Aluminum Corp.*, 990 F.2d 711, 721 (2d Cir. 1993). The court concluded that "in addition to imposing a strict liability scheme, CERCLA does away with a causation requirement." *Id.*

[35]     Likewise, in *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930 (8th Cir. 1995), the Eighth Circuit discussed the CERCLA framework and addressed the causation element. The court noted that CERCLA does not require the plaintiff to prove that the defendant caused actual harm to the environment at the liability stage. *Id.* at 935. And the court concluded that "[h]arm to the environment is material only when allocating responsibility" for the plaintiff's response costs once liability is established. *Id.*

[36] And in *Canadyne-Georgia Corp. v. NationsBank, N.A. (S.)*, 183 F.3d 1269 (11th Cir. 1999), the Eleventh Circuit summarized CERCLA liability as: "CERCLA does not allocate liability based on fault or negligence; it is a strict liability statute. CERCLA imposes liability on individuals not based on their causing the release of hazardous substances, but *based solely on their prior or current relationship to the polluted property*." *Id.* at 1275 (emphasis added).

[37] Thus, the nature of CERCLA liability is well settled. Here, liability was imposed because of ACBL's relationship to the contaminated shipyard site, regardless of ACBL's fault or negligence. Therefore, as ACBL seeks coverage for the EPA's CERCLA strict liability claim against it, we must interpret the policies' phrase "liability arising out of" in the context of strict liability, not negligence. But ACBL misapprehends the operation and effect of CERCLA liability and focuses on whether SBA's cleaning of the barges *was the cause of* the contamination at the shipyard. An inquiry into negligent causation and damages is not required to establish ACBL's CERCLA liability or its coverage claim.

[38] Accordingly, the "efficient and predominating cause" test advanced by ACBL is inapposite here because it is a test for causation in negligence and does not apply to strict liability, which attaches without regard to causation. In other words, a test grounded in negligence has no bearing on a reasonable interpretation of the phrase "liability arising out of" in the CERCLA context. Thus, ACBL's attempt to insert a causation element into the CERCLA liability scheme must fail.

[39] Moreover, the goal of contract interpretation is to determine the intent of the parties when they made the agreement. *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). And "'[u]nless the contract provides otherwise, all applicable law in force at the time the agreement is made impliedly forms a part of the agreement,' because 'the parties are presumed to have had the law in mind.'" *Schwartz v. Heeter*, 994 N.E.2d 1102, 1106 (Ind. 2013) (quoting *Ethyl Corp. v. Forcum-Lannom Assocs., Inc.*, 433 N.E.2d 1214, 1220 (Ind. Ct. App. 1982)). When considering now, many years after the fact, whether there is more than one reasonable interpretation of the phrase "liability arising out of" as it is used in the excess policies, we must ask whether when the excess policies were issued, there was Indiana law holding that the "efficient and predominating cause" test for negligent causation applies to a strict liability claim. There was no such law then, and there is none now. Thus, the notion that an efficient and predominating cause was required as a condition precedent to strict liability could not have been a reasonable interpretation of "liability arising out of" within the contemplation of the parties when the policies were issued.

[40] We conclude that in this strict liability case the phrase "liability arising out of" is unambiguous, is not subject to more than one reasonable interpretation, and does not require judicial construction. Accordingly, we will apply the plain and ordinary meaning to determine whether ACBL's liability arose out of its ownership or maintenance of the barges. *See Erie Indem. Co.*, 99 N.E.3d at 630.

[41] One dictionary defines liability as "[t]he quality, state, or condition of being legally obligated or accountable" and alternatively as "legal responsibility to another or to society." *Liability*, BLACK'S LAW DICTIONARY (12th ed. 2024). Another defines liability as the "state of being liable," where liable means "obligated according to law" or "responsible." https://www.merriam-webster.com/dictionary/liability [https://perma.cc/Z547-RRHE] (last visited April 21, 2026); https://www.merriam-webster.com/dictionary/liable [https://perma.cc/LT5E-YBWN] (last visited April 21, 2026). As to the term "arise," one authority defines it as "to come into being" or "to originate from a source." https://www.merriam-webster.com/dictionary/arise [https://perma.cc/7KP6-TQDF] (last visited April 21, 2026). Additional definitions include: "[t]o originate; to stem (from)" and "[t]o result (from)." *Arise*, BLACK'S LAW DICTIONARY (12th ed. 2024). Here, the plain and ordinary meaning of the phrase "liability arising out of" in these policies is "legal accountability derived from."

[42] ACBL's strict liability and these dictionary definitions together inform our understanding of the plain meaning of the policies' phrase "liability arising out of." As determined by the EPA, the CERCLA claim against ACBL which triggered ACBL's strict liability is derived from its predecessor's act of arranging for barges containing hazardous substances to be delivered to the shipyard. Nothing else was required for CERCLA liability to attach. This liability, then, clearly and unmistakably arises out of the predecessor's ownership of the barges. On these facts the phrase "liability arising out of" in ACBL's policies

can have no other reasonable meaning. ACBL's derivative liability did not arise out of the cleaning of the barges by SBA but out of its predecessor's ownership of watercraft containing hazardous substances delivered to the shipyard.

[43] In sum, ACBL's CERCLA liability arose out of and attached upon the delivery of barges owned by ACBL's predecessor to the shipyard for cleaning, which, in turn, triggered the watercraft limitation on coverage. The liability did not arise out of, and was not contingent upon, either the subsequent cleaning of the barges or, as ACBL alleges, the improper storage, handling, and treatment of hazardous material at the shipyard. A traditional common law negligence analysis of the factual basis for the CERCLA claim is both unnecessary and inapposite. In this strict liability case, the *Lumbermens* "efficient and predominating cause" test for negligent causation does not apply to the watercraft limitation provision.

## Conclusion

[44] We therefore conclude that the phrase "liability arising out of" is unambiguous in the context of this CERCLA strict liability claim. We hold that under Indiana law the watercraft limitation provision precludes coverage for ACBL. And we affirm the trial court's grant of ACBL's motion for partial summary judgment on the choice of law, reverse its denial of Starr Insurers' cross-motion for summary judgment on coverage, and instruct the trial court to enter summary judgment for Starr Insurers.

Affirmed in part, reversed in part, and remanded with instructions.

Kenworthy, J., and Scheele, J., concur.

ATTORNEYS FOR APPELLANTS

Kenneth C. Newa
Jeffrey C. Gerish
Plunkett Cooney
Bloomfield Hills, Michigan

Agelo L. Reppas
Colleen P. Sorensen
BatesCarey LLP
Chicago, Illinois

Eric B. Hermanson
White & Williams LLP
Boston, Massachusetts

ATTORNEYS FOR APPELLEE

Peter M. Racher
Ryan T. Leagre
Joanne R. Sommers
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
UNITED POLICYHOLDERS

Thomas F. O'Gara
Bose McKinney & Evans
Indianapolis, Indiana